## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KAY OBERMEYER,

       Plaintiff,

vs.                                                                 No. CIV 09-0737 JB/CEG

TOM VILSACK, SECRETARY,
U.S. DEPARTMENT OF AGRICULTURE,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment and Memorandum in Support, filed July 20, 2010 (Doc. 29)("Motion"). The Court held a hearing September 16, 2010. The primary issue is whether Plaintiff Kay Obermeyer has established a question of material fact whether the Defendant discriminated against her because of her disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701-794a. The Court finds that Obermeyer has failed to establish a genuine question of material fact whether the Defendant discriminated against her and grants the Defendant's Motion for Summary Judgment.

### FACTUAL BACKGROUND

Obermeyer assets that she is legally deaf and is a handicapped individual within the meaning of 29 U.S.C. § 706(8), and is disabled pursuant to 42 U.S.C. § 12102.[1] See Complaint, filed July 27, 2009 (Doc. 1). She is now on long-term disability retirement and has been since May 2009. See, e.g., Deposition of Kay Obermeyer at 5:23-6:14 (taken June 8, 2010), filed July 20, 2010 (Doc. 29-1).

---

[1] The Defendant assumes, for the purposes of this Motion only, that Obermeyer will be able to prove that she is disabled within the meaning of the Rehabilitation Act.

Obermeyer's most recent position with the United States Department of Agriculture, Forest Service ("FS"), was as an Accounting Technician, GS-0525-07, at the Albuquerque Service Center ("ASC"), in Albuquerque, New Mexico.  See, e.g., Obermeyer Depo. at 15:15-16.  Before her reassignment to the ASC in 2005, Obermeyer was a Financial Assistant, GS-0503-07, for the FS's Geospatial Service and Technology Center ("GSTC"), in Salt Lake City, Utah.  See, e.g., Obermeyer Depo. at 16:21; id. at 20:21-21:1.  At the GSTC, Charlene V. McDougald was a Budget Officer and Obermeyer's first-line supervisor.  See, e.g., Declaration of Charlene V. Mcdougald ¶¶ 2-3, at 1 (executed July 19, 2010), filed July 20, 2010 (Doc. 29-2).  Roberta "Robin" Carroll was Obermeyer's Third Line Supervisor while she worked at GSTC.  See, e.g., Affidavit of Roberta "Robin" Carroll ¶ 3, at 2 (executed June 15, 2007), filed August 24, 2010 (Doc. 36-3).

Obermeyer had applied for a Budget and Accounting Analyst position in April 2003, and she was on the Certificate of Candidates.  See, e.g., McDougald Aff. ¶ 17, at 6; Affidavit of Pam W. Padilla ¶ 7, at 3 (executed June 4, 2007), filed August 24, 2010 (Doc. 36-1).  Obermeyer previously filed an Equal Employment Opportunity ("EEO") Complaint about another matter.  See Complaint ¶ 10, at 2; Answer ¶ 10, at 3, filed October 27, 2009 (Doc. 6).

A Budget Analyst, GS-0560-07/09, position with GSTC was classified and advertised in July 2006.  See, e.g., Declaration of Roberta "Robin" Carroll ¶ 5, at 1-2 (executed July 20, 2010), filed July 20, 2010 (Doc. 29-3).  Obermeyer applied for the Budget Analyst position in August 2006.  See, e.g., Carroll Decl. ¶ 4, at 1; McDougald Decl. ¶ 4, at 1.  Obermeyer was deemed to be a promotion-eligible candidate and qualified for the position.  See, e.g., Carroll Aff. ¶ 17, at 2; McDougald Decl. ¶ 9, at 2.  The automated staffing and classification system, AVUE, generated listings of twenty-four qualified candidates for the position.  Obermeyer's name was on the lists for

both the GS-7 and GS-9 levels.  See, e.g., McDougald Decl. ¶ 9, at 2.

After the applications were submitted, a three-person panel was convened in accordance with GSTC practice ("Panel").  See, e.g., Carroll Decl. ¶ 7, at 2; McDougald Decl. ¶ 6, at 2.  As the supervisor of the Budget Analyst position, McDougald served as Panel Evaluation Team Chairperson.  See, e.g., Carroll Decl. ¶ 10, at 3; McDougald Decl. ¶ 6, at 2.  She was also the Recommending Official.  See, e.g., McDougald Decl. ¶ 5, at 1.  Marcia A. Thomas, Administrative Officer, was the Selecting Official, and did not participate in the rating and ranking of the candidates. See, e.g., McDougald Decl. ¶ 5, at 1; Affidavit of Marcia A. Thomas ¶¶ 11, 15, at 5, 6 (executed June 11, 2007), filed July 20, 2010 (Doc. 29-6).  Carroll was the Approving Official.  See, e.g., Carroll Decl. ¶ 6, at 2; McDougald Decl. ¶ 5, at 1.  Randy Miles, Administrative Officer, United States Geological Survey, served as a Panel member.  See, e.g., McDougald Decl. ¶ 7, at 2; Declaration of Randy Miles ¶¶ 1-3, at 1 (executed July 19, 2010), filed July 20, 2010 (Doc. 29-4).  Bradley K. Losito, then Information Technology Specialist in the Program Coordination Unit of GSTC, also served as a Panel member.  See, e.g., Declaration of Bradley K. Losito ¶ 11, at 3 (executed July 20, 2010), filed July 20, 2010 (Doc. 29-5); McDougald Decl. ¶ 7, at 2.

The Panel met on two days: August 24 and 31, 2006.  See, e.g., Carroll Decl. ¶ 8, at 2.[2]  Pam

_____

[2] Obermeyer did not respond to the Defendant's assertion of this fact, so it is deemed admitted.  See D.N.M.LR-Civ.56.1(b) states:

> A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.

Id. (emphasis added).

Padilla, then Human Resources Specialist with GSTC, assisted the Panel members, instructing them on the manner in which the Panel should be conducted and, after the scoring, adding up the scores and witnessing the discussions between the Panel members in reaching a consensus on the final scores.  See, e.g., McDougald Decl. ¶¶ 6, 8, at 2; Thomas Aff. ¶ 13, at 6.[3]  Padilla explained the rating and ranking process, which involved three criteria for the GS-7 level and six for the GS-9 level.  See, e.g., Losito Decl. ¶ 6, at 2; McDougald Decl. ¶ 10, at 3.[4]  Douglas Johnson, a member of the Human Resource Action Team, also participated on the Panel, but did not score the candidates.  See, e.g., Losito Decl. ¶ 6, at 2; McDougald Decl. ¶ 8, at 2.

The maximum possible score for the GS-7 level was of 45 and for the GS-9 level was 90. See, e.g., McDougald Decl. ¶ 10, at 3.  Each Panel member independently rated the candidates on their Knowledge, Skills, and Abilities ("KSA").  See, e.g., Losito Decl. ¶ 8, at 2; McDougald Decl. ¶ 11, at 3; Miles Decl. ¶ 9, 2.[5]  The Panel then wrote the candidates' scores on a board, and collectively discussed any significant differences in scores for the highest ranking candidates and reached a consensus for the final scores.  See, e.g., Losito Decl. ¶ 9, at 2; McDougald Decl. ¶ 11, at

_____

[3] In her response to the Defendant's Statement of Undisputed Material Facts, Obermeyer asserts that she "is without sufficient information to be able to respond to the [Defendant's] undisputed facts set forth in paragraphs 16-18, 20-24, 29 and 32."  Plaintiff's Response to Defendant's Motion for Summary Judgment ¶ 2, at 2, filed August 24, 2010 (Doc. 36)("Response").  Because Obermeyer failed to "specifically controvert" the material facts Defendant set forth in these paragraphs, the Court treats the fact as admitted.  D.N.M.LR-Civ.56.1(b).

[4] Obermeyer admits that Padilla assisted the Panel, but asserts that she does not know the particulars on how.  See Response ¶ 4, at 2.  Because Obermeyer failed to "specifically controvert" the material facts Defendant set forth, the Court treats the fact as admitted.  D.N.M.LR-Civ.56.1(b).

[5] In her response to the Defendant's Statement of Undisputed Material Facts, Obermeyer asserts that she "denies paragraphs 19 . . . and 36," but fails to specify any reason.  Response ¶ 3, at 2.  Because Obermeyer fails to "specifically controvert" the material facts Defendant set forth, the Court treats these facts as admitted.  D.N.M.LR-Civ.56.1(b).

3; Miles Decl. ¶ 10, at 2.

Out of a possible maximum score of 45 for the GS-7 level, the Panel assigned the top three candidates a score of 45, and the Panel assigned Obermeyer a score of 37, ranking her at about number 9.  See, e.g., McDougald Decl. ¶ 10, at 3; Table of Scores, filed July 20, 2010 (Doc. 29-7). Out of a possible maximum score of 90 for the GS-9 level, the Panel assigned the top three candidates scores of 84, 82, and 82, and the Panel assigned Obermeyer a score of 50, ranking her at about number 10.  See, e.g., McDougald Decl. ¶ 10, at 3; Table of Scores.  There were significant discrepancies between some of the scores of the various individuals who were rated.  See Padilla Aff. ¶ 18-19, at 6-7.[6]

The Panel members selected the top three candidates for each grade level, and they decided someone should telephone the supervisors and references for those applicants, which McDougald did on September 1, 2006.  See, e.g., McDougald Decl. ¶ 12, at 4. McDougald did not check Obermeyer's references or supervisors in conjunction with her application for the position, because she was not in the top three.  See, e.g., Affidavit of Charlene V. McDougald ¶ 12, at 5(executed June 11, 2007), filed August 24, 2010 (Doc. 36-2).  McDougald then prepared a memorandum for Thomas, explaining the means of recruitment for the Budget Analyst position, the rating/ranking process,

---

[6] Obermeyer alleges "there were significant discrepancies between the scores of the various individuals who were rated," Response ¶ 17, at 5 (citing Padilla Aff. ¶ 18, at 6-7), a contention that the Defendant denies, see Reply at 5 (citing McDougald Decl. ¶ 11, at 3; Miles Decl. ¶ 10, at 2; Table of Scores.  Padilla testified: "I was present when significant discrepancies between scores were discussed between the panelists and a consensus was reached on a final score by each rater for each candidate."  Padilla ¶ 18, at 7.  She also testified that, because Obermeyer "was not among the highest scored . . . , despite a variance between the individual panelist's scores for Complainant, the differences in the Complainant's scores were not addressed."  Padilla ¶ 19, at 7.  The evidence the Defendant cites is consistent with Padilla's testimony.  Accordingly, the Court accepts Obermeyer's assertion of facts on this part.

Padilla's role in the process, and the strengths and weaknesses of the top three candidates recommended for each level.   See, e.g., McDougald Decl. ¶ 13, at 3; Announcement: ADS06-WO-UT-GSTC-001, filed July 20, 2010 (Doc. 29-8).

McDougald and Thomas interviewed the top three candidates for each level.   See, e.g., McDougald Decl. ¶ 14, at 3-4; Thomas Aff. ¶ 15, at 6.   Based on the rating/ranking results, reference/supervisor checks, and the interviews, McDougald recommended that Kaylee Ly be selected for the Budget Analyst position at the GS-9 level. See, e.g., Carroll Decl. ¶ 12, at 3; McDougald Decl. ¶ 15, at 4.   Thomas selected Ly, and Carroll approved the selection.   See, e.g., Carroll Decl. ¶ 12, at 3; McDougald Decl. ¶ 15, 4.

Ly was already a GS-9 Budget Analyst on the Angeles National Forest and had a degree in accounting. See, e.g., Carroll Decl. ¶ 13, 3; McDougald Decl. ¶ 14, 4. Ly applied for only the GS-9 position and was rated only on that position.   See, e.g., Padilla Aff. ¶ 19, at 7.[7]  Ly does not have a physical disability or prior EEO activity.   See, e.g., Padilla Aff. ¶ 15, at 6.  After accepting the Budget Analyst position , Ly vacated the Budget Analyst position, and the position was re-advertised,  and no further selection was made.   See, e.g., Padilla Aff. ¶ 19, at 7.[8]

The Defendant alleges, and Obermeyer denies, that Obermeyer's hearing impairment and prior EEO activity were not factors in her not being selected for the position at issue.   See, e.g., Motion ¶ 35, at 8 (citing Carroll Decl. ¶¶ 16-17, at 3-4; Losito Decl. ¶ 12, at 3; McDougald Decl.

---

[7] An individual in a GS-9 would not be expected to apply for a GS-7 position.  See Reply ¶ 11, at 5-6.

[8] The reason the reason the position was not filled immediately was because of a number of factors, including budgetary considerations.  See, e.g., Reply ¶ 13, at 6 (citing Carroll Aff. ¶ 27, at 3; Thomas Aff. ¶ 21, at 9).

¶¶ 17-18, at 4; Miles Decl. ¶ 13, at 2-3; Thomas Aff. ¶ 16, at 7); Response ¶ 3, at 2.[9] McDougald and Thomas were aware of Obermeyer's hearing disability and her previous EEO Complaint. See, e.g., McDougald Aff. ¶ 4, at 2; Thomas Aff. ¶¶ 4, 6, at 2-3. Carroll and Losito were aware of Obermeyer's hearing impairment, and Carroll was aware Obermeyer applied for the Budget Analyst position. See, e.g., Carroll Aff. ¶¶ 4, 6, at 2; Affidavit of Bradley K. Losito ¶ 5, at 13 (executed June 6, 2007), filed August 24, 2010 (Doc. 36-1). Thomas informed Carroll that Obermeyer would be "slow" in performing the duties of the Budget Analyst position. E.g., Carroll Aff. ¶ 21, at 2. McDougald and Thomas had made reference to Plaintiff's "limitations." See Response ¶ 7, at 4 (citing Padilla Aff. ¶ 24, at 7); Reply ¶ 5, at 5 (citing McDougald Aff. ¶ 5, at 2; Thomas Aff. ¶¶ 26-28, at 4-6).[10] McDougald was aware of Obermeyer's 2003 application for the Budget and Accounting Analyst position. See, e.g., McDougald Aff. ¶ 17, at 6.[11] Thomas has testified that at the

---

[9] In her response to the Defendant's Statement of Undisputed Material Facts, Obermeyer asserts that she "denies paragraphs. . . 35," but fails to specify any reason. Response ¶ 3, at 2. Because Obermeyer's Response, with supporting evidence, in substance "specifically controvert[s]" the Defendant's alleged fact, the Court does not treat the fact as admitted. D.N.M.LR-Civ.56.1(b)

[10] The Defendant argues "Ms. McDougald never stated that when references would contact her about Plaintiff, she would provide them with information concerning her supposed 'limitations.' To the contrary, before Plaintiff left GSTC, Ms. McDougald wrote several letters of recommendation for her." Reply at 5 (citing McDougald Aff. ¶ 5, at 123; Exh. 1 thereto. McDougald testified that she "never in or outside of the presence of Ms. Padilla and Ms. Thomas stated that when references call about the Complainant that I provide information concerning her limitations." McDougald Aff. ¶ 5, at 123. The Defendant further argues the "Ms. Thomas likewise discounts that either she or Ms. McDougald ever made any such statement." Reply at 5 (citing Thomas Aff. ¶¶ 26-28, at 4-6). Because the Court must treat Obermeyer's version of the facts as true, and finds that, even assuming these statements are true, Obermeyer has not established a genuine question of material fact, the Court will treat the fact as true. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999)(stating that the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party).

[11] Obermeyer alleges that McDougald, Thomas, and Carroll were the officials making selections for the 2003 position. See, e.g., Response at ¶ 3, at 3 (citing Padilla Aff. ¶ 7, at 3). The

time Obermeyer applied for a GS-9 position in 2003, she believed that Obermeyer would have had a difficult time learning and performing the duties of the position within a reasonable period of time. See, e.g., Thomas Aff. ¶ 26, at 4-5.

Obermeyer did not know Losito or Miles at the time she applied for the Budget Analyst position. See, e.g., Obermeyer Depo. at 27:13-21.  Miles did not know any of the candidates, but he knew Obermeyer "slightly."  Miles Decl. ¶ 6, at 2.  Obermeyer has no reason to believe that Miles knew she had a disability.  See, e.g., Obermeyer Depo. 27:22-28:1; id. at 28:21-25; id. at 29:1-5. When they served on the Panel, neither Losito nor Miles was aware that Obermeyer had previously engaged in EEO activity, see, e.g., Losito Decl. ¶ 3, at 1; Miles Decl. ¶ 16, at 3, but Losito knew that Obermeyer had a disability, see Losito Aff. ¶ 5, at 13.

To perform the position of Budget Analyst, Obermeyer would have needed some additional training.  See, e.g., Obermeyer Depo. at 25:22-26:6; id. at 26:18-24; id. at 55:20-56:3.  McDougald believed that Obermeyer could have performed the duties of a Budget Analyst at the GS-7 level with a "considerable amount of training."  E.g., McDougald Affirm. ¶ 18(2), at 9.  Thomas did not know whether Obermeyer could have performed the duties of the GS-7 and GS-9 positions, with or without reasonable accommodation, noting that Obermeyer had left GSTC in April of 2005.  See, e.g., Thomas Aff. ¶¶ 23-24, at 4.[12]

---

Defendant asserts that Obermeyer applied only for the one prior position, and denies that McDougald, Thomas, and Carroll were the officials making selections for the 2003 position because Obermeyer's evidentiary citations do not support her contentions.  See, e.g., Reply ¶ 3, at 4.  After reviewing the record, the Court finds no support in the record for the contention that McDougald, Thomas, and Carroll were the officials making selections for the 2003 position.

[12] Obermeyer alleges, and the Defendant denies, that she requested a number of times to be given the opportunity to learn the Budget Analyst position and received no response.  See, e.g., Response ¶ 23, at 6 (citing Rebuttal of Kay Obermeyer ¶ 3(d), at 6, filed August 24, 2010 (Doc. 36-

3)). Obermeyer's Rebuttal Statement is not a sworn statement, however, and the Defendant argues that the Court should not consider the Rebuttal as admissible evidence under rule 56(e) of the Federal Rules of Civil Procedure, and that she confuses the 2003 Budget & Accounting Analyst GS-0501-9 position and the 2005 position on which Obermeyer filed her first EEO complaint with the one at issue herein, the 2006 Budget Analyst GS-0560-07/09 position. The Defendant asserts that the former position is the one referenced in Obermeyer's Rebuttal, that neither the 2003 or the 2005 position is relevant to her claims, and that she does not make the statement that she "requested a number of times to be given the opportunity to learn the Budget Analyst position and received no response." Reply ¶ 16, at 6-7. The Court finds that Obermeyer's assertion is unsupported; her unsworn rebuttal statement is not admissible evidence. Rule 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

See, e.g., Wyatt v. Gibson, 128 F. App'x 85, 86 (10th Cir. 2005)("[W]e agree with the district court that these unsworn allegations do not furnish an evidentiary basis for resisting summary judgment." (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). In Johnson v. Weld County, Colo., 594 F.3d 1202 (10th Cir. 2010), the United States Court of Appeals for the Tenth Circuit rejected a plaintiff's argument that she should be permitted to rely on inadmissible evidence to survive summary judgment,"because they could be replaced at trial by admissible evidence, namely their live testimony." 594 F.3d at 1209. The Tenth Circuit rejected that argument.

> We long ago rejected just this argument as a misreading of Celotex. In Thomas v. IBM, 48 F.3d 478 (10th Cir. 1995), we explained that, while Celotex indicates that the form of evidence produced by a nonmoving party at summary judgment may not need to be admissible at trial, "the content or substance of the evidence must be admissible." Id. at 485 (emphasis added). That is, Rule 56 permits parties at summary judgment to produce their evidence by means of affidavit, a form of evidence that is usually inadmissible at trial given our adversarial system's preference for live testimony. Yet, at the same time, Rule 56 does not suggest we enjoy a license to relax the content or substance of the Federal Rules of Evidence when viewing a summary judgment affidavit: the Rule does nothing to intimate "hearsay testimony that would be inadmissible at trial" somehow becomes admissible simply by being "included in an affidavit to defeat summary judgment." Id. To the contrary, Rule 56 expressly prescribes that a summary judgment affidavit must "be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1); see also 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727, at 497-98 (3d ed. 1998)("Material

The United States Department of Agriculture has a policy of providing equal employment opportunity to all employees, and of prohibiting any discrimination on the basis of disability or retaliation for EEO activity.  The policy states that all employees should have the opportunity to compete on a fair and level playing field to achieve their full potential.  See, e.g., U.S. Department of Agriculture, Forest Service, National Equal Employment Opportunity Policy at 8, filed August 24, 2010 (Doc. 36-3).[13]  As of September 30, 2008,The FS has a special program for recruitment, hiring, and advancement of individuals with targeted disabilities, and has not met its departmental goal in those areas.  See, e.g., National Equal Employment Opportunity Policy at 9.[14]

---

that is inadmissible will not be considered on a summary-judgment motion because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless.").

594 F.3d at 1210.  Additionally, the Court finds that Obermeyer's failure to exhaust administrative remedies bars her failure-to-accommodate claim.  Moreover, because the Court also finds that Obermeyer establishes a prima-facie case of discrimination, admitting her rebuttal would not change the Court's analysis.

Obermeyer also states in her Rebuttal that she "has noted that her management has demonstrated a fear of dealing with her because of her status as a deaf person, noting their facial expressions of avoidance when she seeks to communicate, and being left out of conversations," and that she "been criticized by her management as being 'slow.'" Response ¶¶ 24, 25, at 6 (citing Obermeyer Rebuttal ¶¶ 2-3, at 5).  Again, Obermeyer's Rebuttal is not admissible evidence.  Additionally, as the Defendant argues, these general statements about "management" fail to specify an actor.  Reply ¶ 17, at 7.  See also Simpson v. Jones,316 F. App'x 807, 811 (10th Cir. 2009)(stating that a plaintiff "must present more than unsworn, generalized and conclusory allegations").  Consequently, the Court finds these factual assertions about her treatment by management are unsupported.  The Court will, however, treat her Rebuttal as argument and deal with it as admissible argument.

[13] The Defendant argues that the policy is nothing more than a reaffirmation of existing law concerning equal employment opportunity, and, under 29 U.S.C. § 701, the FS does not have the authority to expand or contract the Rehabilitation Act's waiver of sovereign immunity.  See Reply ¶ 14, at 6.

[14] The Defendant argues this program "represents only a goal, not a requirement that individuals with targeted disabilities be hired despite their lack of qualifications for a particular position."  Reply ¶ 14, at 6.

## PROCEDURAL HISTORY

Obermeyer brings this action pursuant to the Rehabilitation Act of 1973. She filed a complaint with the EEO division of the FS on December 29, 2006. See Complaint of Employment Discrimination at 1 (dated December 29, 2006), filed September 16, 2010 (Doc. 40-6)("EEO Complaint"). Obermeyer then filed her Complaint with this Court on July 27, 2009, alleging that: (i) the Defendant discriminated against her on the basis of her disability, because he did not select her for the Budget Analyst position, GS-0560-07/09, in violation of the Rehabilitation Act; (ii) the Defendant discriminated against her, because he used discriminatory screening criteria in violation of the Americans With Disabilities Act, 42 U.S.C. § 12112 ("ADA"); and (iii) the Defendant retaliated against her for her previous EEO claim, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. See Complaint ¶¶ 19-36, at 4-6.

Obermeyer dismissed her ADA claim, because "there is no waiver of sovereign immunity for Defendant to be sued pursuant to that Act." Unopposed Motion to Dismiss Count II of Plaintiff's Complaint for Discrimination under the Rehabilitation Act of 1973, Violation of the Americans with Disabilities Act and Retaliation, filed January 20, 2010 (Doc. 18). Obermeyer also withdrew her Title VII retaliation claim. See Response at 1 ("Plaintiff also asserted a claim of retaliation but now withdraws that claim and consents to judgment dismissing the retaliation claim.").

The Defendant moves for summary judgment, arguing that the Defendant did not discriminate against Obermeyer, that she cannot establish a prima-facie case of disparate treatment, and that even if she could, the Defendant has a legitimate, nondiscriminatory basis for not promoting Obermeyer in that another candidate was more qualified. See Motion at 10-16. Obermeyer responds that the Defendant failed to accommodate her disability, that she has advanced direct evidence of

discrimination, and, in the alternative, that she can establish a prima-facie case of discrimination and that the Defendant's justification is pretextual.  See Response 7-13.  After carefully reviewing the record and the parties' arguments, the Court finds that Obermeyer has failed to establish a genuine question of material fact whether the Defendant discriminated against her, and grants the Defendant's Motion for Summary Judgment.

**LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT**

Rule 56(c) states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotes omitted).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated §., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539.  Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11

F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249 (internal citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  <u>See Hunt v. Cromartie</u>, 526 U.S. 541, 550-55 (1999).  Third, the court cannot decide any issues of credibility.  <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255.

## LAW REGARDING EXHAUSTION OF REHABILITATION ACT CLAIMS

"The exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action in federal court under both the Rehabilitation Act and Title VII."  <u>Showalter v. Weinstein</u>, 233 F. App'x 803, 804 (10th Cir. 2007)(citing <u>Woodman v. Runyon</u>, 132 F.3d 1330, 1341 (10th Cir. 1997)(Rehabilitation Act); <u>Jones v. Runyon</u>, 91 F.3d 1398, 1399 (10th Cir. 1996)(Title VII)).  The failure to exhaust administrative remedies in a timely fashion, however, is not jurisdictional, although it may bar a plaintiff from bringing his or her claims in federal court.  <u>See Sizova v. Nat'l Inst. of Standards & Tech.</u>, 282 F.3d at 1325 (noting that "a failure to timely file an administrative charge . . . is not jurisdictional, [but that] a failure to file an administrative charge at all . . . is a

jurisdictional bar").  Failing to exhaust administrative remedies does not "bar an employee from using the prior acts as background evidence in support of a timely claim."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

1.      **Requirements for Exhausting Administrative Remedies.**

"Federal employees alleging discrimination or retaliation prohibited by Title VII or the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies."  Showalter v. Weinstein, 233 F. App'x at 804 (citing 29 C.F.R. pt. 1614).  Tenth Circuit "appl[ies] Title VII's jurisdictional requirements to the Rehabilitation Act."  Greenlee v. U.S. Postal Service, 247 F. App'x 953, 955 (10th Cir. 2007)(citing Johnson v. Orr, 747 F.2d 1352, 1356-57 (10th Cir. 1984)).

A plaintiff generally must exhaust his or her administrative remedies before pursuing a Rehabilitation Act claim in federal court. See Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993). Exhaustion of administrative remedies is central to these statutory schemes, because it provides the Equal Employment Opportunity Commission ("EEOC") with the first opportunity to investigate discriminatory practices, and enables it to perform its roles of obtaining voluntary compliance and of promoting conciliatory efforts.  See Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989).  See Woodman v. Runyon, 132 F.3d at 1342 ("The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance."); Khader v. Aspin, 1 F.3d at 971 ("The requirement that a Title VII claimant exhaust administrative remedies serves the purpose of 'giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer.'")(quoting

-15-

Wade v. Sec'y of Army, 796 F.2d 1369, 1377 (11th Cir. 1986)); Sampson v. Civiletti, 632 F.2d 860, 862-63 (10th Cir. 1980)("The requirement that discrimination complaints be first presented to an agency rather than a court encourages informal, conciliation-oriented resolution of disputes and reduces the burden on federal courts.")(citing Richerson v. Jones, 572 F.2d 89, 97 (3d Cir. 1978)). "'[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" Welsh v. City of Shawnee, 182 F.3d 934, 935 (10th Cir. 1999)(quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)).

The most common method of administrative exhaustion for federal employees is the individual EEO complaint process. The regulations that the EEOC has promulgated, see 29 C.F.R. Part 1614, and the Commission's Management Directive 110 govern the initial EEO complaint process. Pre-complaint counseling is the first step in that process, see 29 C.F.R. § 1614.105, requiring the aggrieved employee to consult with an agency counselor within forty-five days of the alleged discriminatory act or, in the case of a personnel action, within forty-five days of the effective date of the action, see id. The forty-five day requirement applies to both Title VII and Rehabilitation Act claims. 29 C.F.R. § 1614.105(a)(1) provides:

> Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter. . . . An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).

After timely filing a charge of discrimination with the EEOC setting forth the facts and nature

of the charge, the plaintiff must next receive notice of the right to sue. See Simms v. Oklahoma ex

rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42

U.S.C. § 2000e-5(b), (c), (e), (f)(1). "[A] plaintiff normally may not bring a Title VII action based

upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a

right-to-sue letter." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,

165 F.3d at 1326. Once an individual receives notice of the right to sue, he or she has ninety days

in which to file suit. See 42 U.S.C. § 2000e-5(f)(1).

## 2.  **The Exhaustion of Administrative Remedies Is Jurisdictional.**

Filing a charge of discrimination with the EEOC is a jurisdictional prerequisite to the

institution of a lawsuit based on a claim of employment discrimination under Title VII and the

Rehabilitation Act. See Alcivar v. Wynne, 268 F. App'x 749, 753 (10th Cir. 2008)("The Tenth

Circuit has consistently held that 'exhaustion . . . is a jurisdictional prerequisite to suit under Title VII

-- not merely a condition precedent to suit.'")(quoting Shikles v. Sprint/United Mgmt. Co., 426 F.3d

1304, 1317 (10th Cir. 2005)); Ransom v. U.S. Postal Service, 170 F. App'x 525, 527 & n.2 (10th Cir.

2006)("[A] claimant under the Rehabilitation Act . . . is required to present her claims to the

appropriate EEO agency before filing suit.")(citing 5 U.S.C. § 7702(a)(2); Wells v. Shalala, 228 F.3d

1137, 1142-43 (10th Cir. 2000)); Jones v. Runyon, 91 F.3d at 1399 ("Exhaustion of administrative

remedies is a jurisdictional prerequisite to suit under Title VII."); Romero v. Union Pac. R.R., 615

F.2d 1303, 1303 (10th Cir. 1980). Without such a filing, federal courts lack subject-matter

jurisdiction to entertain discrimination claims under these statutes, and a rule 12(b)(1) motion to

dismiss is procedurally proper. See Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 799 (10th Cir.

1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-04 (D. Colo. 1999).[15]

### a.    Each Discrete Incident Must be Exhausted.

Before 2002, under the "continuing violation" theory, the Tenth Circuit recognized a limited exception to the "exhaustion rule for Title VII claims when the unexhausted claim is for discrimination like or reasonably related to the allegations of the EEOC charge."   Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d at 1327 (internal citations and quotations omitted).   The Tenth Circuit "construed the 'reasonably related' exception to include most retaliatory acts subsequent to an EEOC filing."   165 F.3d at 1327 (citing Seymore v. Shawyer & Sons, Inc., 111 F.3d at 799).   In Martinez v. Potter, 347 F.3d 1210 (2003), however, the Tenth Circuit noted that the "Supreme Court's recent pronouncement in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions."   347 F.3d at 1210.   The Tenth Circuit's "decisions have unambiguously recognized Morgan as rejecting application of the

_____

[15] The Tenth Circuit has mentioned some concern whether failure to exhaust administrative remedies is still a jurisdictional prerequisite to suit after the Supreme Court's decision in Jones v. Bock, 549 U.S. 199 (2007).  See, e.g., Alcivar v. Wynne, 268 F. App'x at 753 (noting that "Jones v. Bock held that under the PLRA [Prison Litigation Reform Act] exhaustion is an affirmative defense to be raised by the defendant and not a jurisdictional pleading requirement," but finding it was "not . . . necessary to decide whether exhaustion is jurisdictional under Title VII after Jones."); McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 873 (10th Cir. 2007)("Although courts have repeatedly referred to the exhaustion requirement as *jurisdictional*, . . . recent Supreme Court jurisprudence in other contexts casts doubt on that characterization[.]")(citations omitted, emphasis in original).   Neither party in this case argues that administrative exhaustion is not still a jurisdictional prerequisite.   Moreover, a recent unpublished Tenth Circuit decision indicates that Jones v. Bock did not demote the exhaustion requirement from a jurisdictional prerequisite to an affirmative defense, at least in the Title VII context.   See Martinez v. Target Corp., No. 09-2112, 2010 WL 2616651, at *3 n.2 (10th Cir. July 1, 2010)(slip op.)(Kelly, Porfilio, O'Brien, JJ.)("Martinez is not proceeding under the PLRA; Bock is inapposite.   She does not point us to a single decision -- of this or any other court -- applying Bock in the context of a Title VII or ADEA case.").

'continuing violation' theory."   Martinez v. Potter, 347 F.3d at 1211 (citing Davidson v. America

Online, Inc., 337 F.3d 1179 (10th Cir.2003)).   The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete
> employment actions are no longer viable.   Morgan abrogates the continuing violation
> doctrine as previously applied to claims of discriminatory or retaliatory actions by
> employers, and replaces it with the teaching that each discrete incident of such
> treatment constitutes its own unlawful employment practice for which administrative
> remedies must be exhausted.

347 F.3d at 1210 (internal citations and quotations omitted).

Thus, under National Railroad Passenger Corp. v. Morgan, each discrete act of discrimination

must be administratively exhausted.   "Discrete acts such as termination, failure to promote, denial

of transfer, or refusal to hire are easy to identify.   Each incident of discrimination and each retaliatory

adverse employment decision constitutes a separate actionable unlawful employment practice."   Nat'l

R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted).   In

National Railroad Passenger Corp. v. Morgan, this rule applied to bar a plaintiff from suing on claims

for which no administrative remedy had been sought when those incidents complained of occurred

more than 45 days before the filing of Plaintiff's EEO complaint.   See Martinez v. Potter, 347 F.3d

at 1210.   "The rule is equally applicable, however, to discrete claims based on incidents occurring

after the filing of Plaintiff's EEO complaint."   Id. at 1210-11.   The Tenth Circuit has stated: "Our

decisions have unambiguously recognized Morgan as rejecting application of the continuing violation

theory."   Martinez v. Potter, 347 F.3d at 1211 (internal quotations omitted).   Failing to exhaust

administrative remedies does not "bar an employee from using the prior acts as background evidence

in support of a timely claim."   Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 113.   See King v.

Salazar, Nos. CIV 05-0575 JB/WDS, 05-0997 JB/WDS, 2009 WL 131152, at *2 (D.N.M.

2009)(Browning, J.)("[E]vidence about a time-barred discrete act can be used as background

evidence for a discrimination or retaliation claim.").

### b.   At Least One Related Act that Is the Basis of a Hostile Environment Claim Must Be Exhausted.

A different rule applies to hostile environment claims.  Under National Railroad Passenger Corp. v. Morgan, a series of events that constitute a hostile environment claim are considered one unlawful action.  See West v. Norton, 376 F. Supp. 2d 1105, 1129 (D.N.M. 2004)(Browning, J.). "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 115 (internal citations and quotations omitted).  An "unlawful employment practice" that constitutes a hostile work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Thus, so long as one of the incidents included within the claim of hostile environment occurred within the 300-day time limit provided for under 42 U.S.C. § 2000e-5(e)(1), other conduct that occurred outside of the proscribed time period, but contributing to the hostile work  environment, is not time barred.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 105 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period"); West v. Norton, 376 F. Supp. 2d at 1129. "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'"  Duncan v. Manager, Dep't of Safety, City & Co. of Denver, 397 F.3d at 1309 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 120).

## 2. <u>Time Requirements for Exhausting Administrative Remedies Are Not Jurisdictional.</u>

While failure to exhaust administrative remedies is a jurisdictional bar to suit, in <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385 (1982), the Supreme Court of the United States held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. at 393. <u>See</u> <u>DeWalt v. Meredith Corp.</u>, 288 F. App'x 484, 490 (10th Cir. 2008)(citing <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. at 393; <u>Beaird v. Seagate Tech., Inc.</u>, 145 F.3d 1159, 1174-75 (10th Cir.1998)).  The Tenth Circuit treats a plaintiff's failure to timely exhaust administrative remedies not "as a jurisdictional issue, [but] rather . . . as an affirmative defense to be raised by [defendants]." <u>DeWalt v. Meredith Corp.</u>, 288 F. App'x at 490.  When a defendant brings a motion to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1) based on a plaintiff's failure to exhaust administrative remedies in a timely manner, a court "analyze[s] th[e] case under 12(b)(6) of the Federal Rules of Civil Procedure," unless a court considers materials outside the complaint, in which case "it should . . . treat[] [the] motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." <u>Douglas v. Norton</u>, 167 F. App'x 698, 704-05 (10th Cir. 2006).

Though not jurisdictional, the forty-five-day limitation period is not an arbitrary barrier.  It is designed to give an agency timely notice of potentially illegal conduct, to discover and correct its own errors and possibly to conciliate the claim. <u>Sampson v. Civiletti</u>, 632 F.2d at 863.  An employee who fails to comply with the limitation period is barred from seeking judicial relief in federal court, absent a defense of equitable tolling. <u>See</u> <u>Davis v. U.S. Postal Serv.</u>, 142 F.3d 1334, 1339 (10th Cir. 1998); <u>Wilson v. West</u>, 962 F. Supp. 939, 944 (1997).

## THE LAW UNDER THE REHABILITATION ACT

"The Rehabilitation Act prohibits discrimination against an 'otherwise qualified individual with a disability.'" McGeshick v. Principi, 357 F.3d 1146, 1149 (10th Cir. 2004)(quoting 29 U.S.C. § 794). The Rehabilitation Act prohibits employers from discriminating against or failing to accommodate employees who are disabled within the meaning of the Act, and creates a private right of action in favor of a qualified victim of such discrimination. See Detterline v. Salazar, 320 F. App'x 853, 856 (10th Cir. 2009). "The Rehabilitation Act expressly incorporates and adopts the employment discrimination standards contained in Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq." Detterline v. Salazar, 320 F. App'x at 856 (citing 29 U.S.C. § 791(g)). Because of this relationship, "decisions under both Acts apply interchangeably to our analysis." Detterline v. Salazar, 320 F. App'x at 856 (quoting Vidacak v. Potter, 81 F. App'x 721, 723 (10th Cir. 2003)). A plaintiff must support his or her case with either direct or circumstantial evidence. Davidson v. Am. Online, Inc., 337 F.3d 1179, 1189 (10th Cir. 2003).

### 1.    Direct Evidence of Discrimination

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." Hall v. U.S. Dep't of Labor, 476 F.3d 847, 855 (10th Cir. 2007). Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." Danville v. Reg'l Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002). "A statement that can plausibly be interpreted two different ways -- one discriminatory and the other benign -- does not directly reflect illegal animus, and, thus, does not constitute direct evidence." Hall v. U.S. Dep't of Labor, 476 F.3d at 855 (quoting Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 25 (1st Cir. 2002))(internal quotation marks omitted). "When a plaintiff alleges that discriminatory

comments constitute direct evidence of discrimination, . . . the plaintiff must demonstrate a nexus exists between the allegedly discriminatory statements and the decision to terminate her." Hall v. U.S. Dept. of Labor, Admin. Review Bd., 476 F.3d at 857 (quoting McCowan v. All Star Maint. Inc., 273 F.3d 917, 922 n.3 (10th Cir. 2001))(alterations in original). "Direct evidence is that which demonstrates a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision to take the adverse employment action." Deneen v. Nw. Airlines, 132 F.3d 431, 436 (8th Cir. 1998). "Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements" Hall v. U.S. Dep't of Labor, 476 F.3d at 855 (citing Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999)).

### 2.    Circumstantial Evidence and Establishing a Prima-Facie Case of Disability Discrimination.

In the absence of direct evidence, courts apply the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Davidson v. America Online, Inc., 337 F.3d 1179, 1189 (10th Cir. 2003); Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 & n.3 (10th Cir. 1997). To establish a prima-facie case of discrimination under the Rehabilitation Act, a plaintiff must show: (i) she is disabled under the Act; (ii) she is "otherwise qualified" for her position; (iii) she works for a federal agency; and (iv) the agency has discriminated against her. McGeshick v. Principi, 357 F.3d at 1150. "A showing that similarly situated employees were treated differently is not 'an indispensable element of the prima facie case,' although it may be relevant to show the existence or absence of the . . . element of discrimination." Fox v. Nicholson, 304 F. App'x 728, 730 (10th Cir.

2008)(quoting <u>Sorbo v. United Parcel Serv.</u>, 432 F.3d 1169, 1173 (10th Cir. 2005)).[16]

_____

[16] Unlike other protected classes, a defendant may legitimately consider a plaintiff's disability to determine if she is otherwise qualified for a position.  Because of this principle, the Supreme Court in <u>Alexander v. Choate</u>, 469 U.S. 287 (1985), recognized that two countervailing forces underlie the protections afforded under the section 504 of the Rehabilitation Act.  In addressing a class-action claim challenging changes to Tennessee's Medicare coverage, the Supreme Court considered when showings of disparate impact constitute a prima-facie case of discrimination under the Rehabilitation Act.  The Supreme Court rejected both the argument that all disparate treatment should establish a prima-facie case of discrimination and the argument that only intentional discrimination should qualify.

> [M]uch of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent. For example, elimination of architectural barriers was one of the central aims of the Act, yet such barriers were clearly not erected with the aim or intent of excluding the handicapped.
>
> . . . .
>
> At the same time, the position urged by respondents -- that we interpret § 504 to reach all action disparately affecting the handicapped -- is also troubling.  Because the handicapped typically are not similarly situated to the nonhandicapped, respondents' position would in essence require each recipient of federal funds first to evaluate the effect on the handicapped of every proposed action that might touch the interests of the handicapped, and then to consider alternatives for achieving the same objectives with less severe disadvantage to the handicapped. The formalization and policing of this process could lead to a wholly unwieldy administrative and adjudicative burden.
>
> . . . .
>
> Any interpretation of § 504 must therefore be responsive to two powerful but countervailing considerations -- the need to give effect to the statutory objectives and the desire to keep § 504 within manageable bounds.  Given the legitimacy of both of these goals and the tension between them, we decline the parties' invitation to decide today that one of these goals so overshadows the other as to eclipse it.  While we reject the boundless notion that all disparate-impact showings constitute prima facie cases under § 504, we assume without deciding that § 504 reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped. On that assumption, we must then determine whether the disparate effect of which respondents complain is the sort of disparate impact that federal law might recognize.

-24-

An employer can discriminate by failing to accommodate an employee's disability.  The Rehabilitation Act requires federal agencies to reasonably accommodate otherwise qualified employees, unless such an accommodation would create an undue hardship.  See 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.  To establish a prima-facie case of failure to accommodate, a plaintiff must show: (i) she is disabled within the meaning of the Act; (ii) she is a "qualified" individual; (iii) the defendant was aware of her disability; (iv) she needed an accommodation, meaning a causal relationship existed between the disability and the request for accommodation; and (v) the defendant failed to provide the necessary accommodation.  See Whitney v. Bd. of Educ. of Grand County, 292 F.3d 1280, 1285 (10th Cir. 2002)("If a mental limitation is not 'known' to the employer, then any failure to accommodate that limitation is not discrimination within the meaning of the ADA."); Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1109-11 (10th Cir. 1999); Massari v. Potter, No. 04-CV-02306-EWN-MJW, 2006 WL 318658, at *14 (D. Colo. Feb. 9, 2006).

"An employee has the initial duty to inform the employer of a disability before [Rehabilitation-Act] liability may be triggered for failure to provide accommodations -- a duty dictated by common sense lest a disabled employee keep his disability a secret and sue later for

---

469 U.S. at 296-99.  For this reason, the Supreme Court rejected the proposition that all disparate treatment amounts to discrimination.  The Supreme Court looked to its decision in Southeastern Community College v. Davis, 442 U.S. 397 (1979), for guidance in determining when disparate impact would amount to discrimination.

> The balance struck in Davis requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers.  The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.

469 U.S. at 301.

failure to accommodate." Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1134 (7th Cir. 1996). See EEOC v. Convergys Customer Mgmt. Group, Inc., 491 F.3d 790, 795 (8th Cir. 2007)("[T]he employee must provide relevant details of his disability and, if not obvious, the reason that his disability requires an accommodation."); Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 332 (3d Cir. 2003)("[E]ither by direct communication or other appropriate means, the employee 'must make clear that the [he/she] wants assistance for his or her disability.'")(quoting Jones v. United Parcel Serv., 214 F.3d 402, 408 (3d Cir. 2000)); Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1046 (6th Cir. 1998)("The Commission's interpretive guidelines indicate that generally 'it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'")(quoting  29 C.F.R. pt. 1630 App. § 1630.9); Gantt v. Wilson Sporting Goods Co., 143 F.3d at 1046 n.4 ("It is well settled in cases brought under the Rehabilitation Act of 1973 . . . the precursor to the ADA, that reasonable accommodation is not at issue if the plaintiff has never requested accommodations.").  The employee must provide "the employer with enough information that, under the circumstances, the employer can fairly know of both the disability and the desire for an accommodation."  Ballard v. Rubin, 284 F.3d 957, 962 (8th Cir. 2002)(quoting Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 158-59 (3d Cir. 1999)); Paris v. Dep't of Treasury, 104 M.S.P.R. 331, 339 (2006)("[A]n employee . . . has a general responsibility to inform his employer that he needs accommodation for a medical condition.").

### 3.      **Burden-Shifting Under** McDonnell Douglas.

If the plaintiff establishes a prima-facie case for any of his discrimination claims, "the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision."  Mitchell v. City of Wichita, Kan., 140 F. App'x 767, 777 (10th Cir.

2005).  "Upon the employer's articulation of legitimate, nondiscriminatory reasons . . . the presumption of discrimination established by the prima facie case simply drops out of the picture."  Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted).  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000)(quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993)).

Once the defendant produces a legitimate, nondiscriminatory explanation for the defendant's action, to survive summary judgment, the plaintiff must establish a genuine question of material fact whether the defendant's explanation is pretextual.  To establish a genuine issue of material fact as to pretext, a plaintiff must demonstrate that the Defendant's "proffered non-discriminatory reason is unworthy of belief."  Pinkerton v. Colo. Dept. of Transp., 563 F.3d 1052, 1065 (10th Cir. 2009)(internal quotation marks and citations omitted).  To meet this standard, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  Pinkerton v. Colo. Dept. of Transp., 563 F.3d at 1065 (internal quotation marks and citations omitted).  "If a plaintiff advances evidence upon which a factfinder could conclude that the defendant's allegedly nondiscriminatory reasons for the employment decisions are pretextual, the court should deny summary judgment."  Reinhardt v. Albuquerque Public Schools Bd. of Educ., 595 F.3d 1126, 1134 (10th Cir. 2010).  "[A] plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully

discriminated." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. at 148. Consequently, "once

a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of

a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for

a discriminatory reason and must deny summary judgment." Bryant v. Farmers Ins. Exchange, 432

F.3d at 1125.

> Debunking one of the employer's explanations defeats the case for summary judgment "only
> if the company has offered no other reason that, if that reason stood alone (more precisely if
> it did not have support from the tainted reason), would have caused the company to take the
> action of which the plaintiff is complaining."

Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1310 (10th Cir. 2005)(quoting Russell v.

Acme-Evans Co., 51 F.3d 64, 69 (7th Cir. 1995)).

## ANALYSIS

The Defendant argues that the FS did not discriminate against Obermeyer and that she has

failed to create a genuine issue of material fact whether she was discriminated against on the basis

of her disability.   The Defendant argues that Obermeyer has provided no direct evidence of

discrimination and has not established a prima-facie case of disparate treatment.  The Defendant also

argues in the alternative that the FS has a legitimate, nondiscriminatory basis for not promoting

Obermeyer in that another candidate was more qualified.  See Motion at 10-16.

Obermeyer responds that the Defendant failed to accommodate her disability, that she has

advanced direct evidence of discrimination, and, in the alternative, that she can establish a prima-

facie case of discrimination and that the Defendant's justification is pretextual.  See Response 7-13.

The Defendant replies that Obermeyer did not plead or administratively exhaust a

failure-to-accommodate claim, that she failed to request an accommodation for completing her

application for the Budget Analyst position, and that she is consequently precluded from bringing a

failure-to-accommodate claim.

For the reasons stated below, the Court finds Obermeyer has not put forth evidence establishing a genuine question of material fact whether the Defendant discriminated against her when he did not promote her.  The Court also finds Obermeyer's failure-to-accommodate claim is not properly before it because the claim was not administratively exhausted.  Consequently, the Court grants the Defendant's motion for summary judgment.

## I.   OBERMEYER HAS NOT ADMINISTRATIVELY EXHAUSTED HER FAILURE-TO-ACCOMMODATE CLAIM.

The Court does not have jurisdiction over Obermeyer's failure-to-accommodate claim,[17] because she did not exhaust her administrative remedies.  Obermeyer argues that, "when she filled out her KSAs for job applications, she was hampered by her writing ability due to her hearing

---

[17] Jeffrey Dahl, Obermeyer's counsel, terms the alleged failure-to-accommodate "the Surmountable Impairment Barriers theory."  Response at 8.  This term appears to derive from a student note published in 1980, see Mark E. Martin, Note, Accommodating the Handicapped: The Meaning of Discrimination under Section 504 of the Rehabilitation Act, 55 N.Y.U. L. Review. 881 (1980), that enjoyed some currency among the federal courts in the 1980s and 1990s.  See, e.g., Burns v. City of Columbus, Dept. of Public Safety, Div. of Police, 91 F.3d 836, 841 (6th Cir. 1996)(citing Martin, supra); Smith v. Barton, 914 F.2d 1330, 1339 (9th Cir. 1990)(same), cert. denied, 501 U.S. 1217 (1991); Prewitt v. U.S. Postal Serv., 662 F.2d 292, 305 n.19 (5th Cir. 1981)(same).  The Note delineates "four different classes of exclusionary barriers" disabled individuals confront.  The Note defined "surmountable impairment barriers" as follows:

> Surmountable impairment barriers are exclusionary barriers caused by the individual's handicap, which, if overcome by accommodation, would not bar program participation.  Unlike neutral standard barriers, this class of obstacles arises from the combination of an impairment and a program's failure to actively accommodate.  For example, a deaf college student could benefit from classroom participation.  No neutral standard bars the student, but a program's failure to provide interpreter service combines with the communication impairment to prevent participation.

Martin, supra, at 884.

impairment which left management with the mistaken idea that she was slow, when she was actually performing well based on her disability." Response at 10 (citing Obermeyer Rebuttal ¶ 3, at 5). She argues that the Defendant failed to accommodate her disability by not providing her with a live interview. See Response at 10. Obermeyer further argues that the Defendant makes "no mention . . . of what accommodations were made to adjust [KSA] ratings based upon the Plaintiff's disability. As Plaintiff has stated, her communication abilities are different than a person who hears normally, but no adjustment was made for this fact." Response at 13. The Defendant replies that Obermeyer's failure-to-accommodate claim is not properly before the Court, because Obermeyer failed to exhaust her administrative remedies on this claim as she did not address it in her EEO charge, and that she did not plead it in her Compliant. See Reply at 11-13.

The Court agrees that Obermeyer's failure-to-accommodate claim is not properly before the Court.[18] "The exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action in federal court under . . . the Rehabilitation Act." Showalter v. Weinstein, 233 F. App'x at 804 (citing Woodman v. Runyon, 132 F.3d at 1341). "Federal employees alleging discrimination . . . must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." Showalter v. Weinstein, 233 F. App'x at 804 (citing 29 C.F.R. pt. 1614).

Obermeyer must exhaust her administrative remedies before pursuing a Rehabilitation Act claim in federal court. See Khader v. Aspin, 1 F.3d at 970. The most common method of administrative exhaustion for federal employees, and the one Obermeyer chose, is the individual EEO

---

[18] At the hearing, Mr. Dahl agreed that Obermeyer's failure-to-accommodate claim "probably is foreclosed by a failure of exhaustion of administrative remedies." Transcript of Hearing at 10:17-19 (taken September 16, 2010)(Dahl)(the Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcript may contain slightly different page and/or line numbers).

complaint process.  The regulations that the EEOC promulgated, see 29 C.F.R. Part 1614, and the

Commission's Management Directive 110 govern the initial EEO complaint process.  Pre-complaint

counseling is the first step in that process, see 29 C.F.R. § 1614.105, requiring Obermeyer to consult

with an agency counselor within forty-five days of the alleged discriminatory act or, in the case of

a personnel action, within forty-five days of the effective date of the action, see id.  The forty-five

day requirement applies to Rehabilitation Act claims.  29 C.F.R. § 1614.105(a)(1) provides:

> Aggrieved persons who believe they have been discriminated against on the basis of
> race, color, religion, sex, national origin, age, disability, or genetic information must
> consult a Counselor prior to filing a complaint in order to try to informally resolve
> the matter. . . .  An aggrieved person must initiate contact with a Counselor within
> 45 days of the date of the matter alleged to be discriminatory or, in the case of
> personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).

In her EEO Complaint, Obermeyer made a claim only for "Physical disability (Hearing);

reprisal (denied promotion on basis of prior filing of EEOC Complaint)."  EEO Complaint at 1.  The

EEO accepted for investigation

> Whether the agency subjected the complainant to discrimination based physical
> disability (hearing impairment) and reprisal (prior EEO activity) when in August
> 2006, she learned that the review panel for the Budget Analyst, GS-0560-07/09
> position . . . did not include her name on the list of eligible candidates referred to the
> selecting official for consideration?

Letter from Denise A. Banks, Division Chief, Employment Complaints Division, to Jeffrey A. Dahl

(dated January 31, 2007), filed July 20, 2010 (Doc. 29-11).

Under National Railroad Passenger Corp. v. Morgan, each discrete act of discrimination must

be administratively exhausted.  "Discrete acts such as termination, failure to promote, denial of

transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory

adverse employment decision constitutes a separate actionable unlawful employment practice."  Nat'l

R.R. Passenger Corp. v. Morgan, 536 U.S. at 114. Neither the EEO Complaint nor the EEO division investigation addressed a claim for failure-to-accommodate, nor do they reference the Defendant requiring Obermeyer to complete the KSA, nor the Defendant's failure to provide her with an oral interview. Consequently, Obermeyer failed to exhaust her administrative remedies for her failure-to-accommodate claim, and the Court lacks subject matter jurisdiction over the claim.

Additionally, Obermeyer's Complaint does not include a failure-to-accommodate claim. The only remaining claim states, in relevant part, that, "[a]s a result of Defendant's unlawful and discriminatory failure to promote the Plaintiff on account of her disability, Defendant has violated the provisions of the Rehabilitation Act 29 U.S.C. § 710, et seq." Compliant ¶ 20, at 4. In Plaintiff's Answers to Defendant's First Interrogatories, Obermeyer responded to the following interrogatory:

> State whether you claim that you were discriminated against on the basis of your disability(s). If your answer is in the affirmative, state:
>
> > (a) Whom you claim discriminated against you and when;
> >
> > (b) What individuals were similarly situated to you who were not qualified Individuals with a disability within the meaning of the Act; and,
> >
> > (c) How you were treated differently from the individuals identified in Subparagraph (b).

Plaintiff's Answers to Defendant's First Interrogatories No. 6, at 4, filed September 16, 2010 (Doc. 40-7). She responded:

> Yes.
>
> (a) On January 25,2006, I claim I was discriminated against by GSTC managers, Robin Carroll, Marcia Thomas and former supervisor, Charlene McDougald.
>
> (b) I was found to be eligible for the position but was not provided with the information of the other eligibles. I was later informed that Kalee Ly was offered the position. I believe I was the only disabled person on the list of eligibles. The other eligibles would have been similarly situated. Some of the persons who were

similarly situated are also referred to in ROI, Ex. 23.

(c) I did not receive the job nor was I on the Certificate of Eligibles.

Plaintiff's Answers to Defendant's First Interrogatories No. 6, at 4 (citation omitted).  Obermeyer

again makes no mention of the Defendant's failure-to-accommodate her disability.  Consequently,

Obermeyer failed to exhaust her administrative remedies for a claim of failure-to-accommodate, and

she does not plead a failure-to-accommodate claim in this case.  As a consequence, the Court lacks

subject-matter jurisdiction and dismisses Obermeyer's failure-to-accommodate claim.[19]

## II.   OBERMEYER HAS NOT ESTABLISHED A GENUINE ISSUE OF MATERIAL FACT WHETHER THE DEFENDANT DISCRIMINATED AGAINST HER BASED ON HER DISABILITY.

Obermeyer has not presented direct evidence of discrimination.  Accordingly, she must rely

upon McDonald Douglas' burden-shifting analysis to defeat the motion for summary judgment.

While Obermeyer establishes a prima-facie case of disability discrimination, she does not show that

there is a genuine issue of material fact whether the Defendant's stated legitimate, nondiscriminatory

reason for not promoting her was pretextual.

### A.   OBERMEYER HAS NOT PRESENTED DIRECT EVIDENCE OF DISCRIMINATION TO ESTABLISH A GENUINE QUESTION OF MATERIAL FACT WHETHER SHE WAS DISCRIMINATED AGAINST ON THE BASIS OF HER DISABILITY.

The Defendant argues that Obermeyer has not put forth any direct evidence that she was

discriminated against.  See Motion at 11.  Obermeyer responds that she has provided at least two

---

[19] This ruling does not, however, preclude Obermeyer from potentially using evidence that the Defendant failed to accommodate her disability as background evidence for her discrimination claim.  Failing to exhaust administrative remedies does not "bar an employee from using the prior acts as background evidence in support of a timely claim."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 113.

pieces of direct evidence of disability discrimination.  First, Obermeyer asserts that Padilla testified

that she heard McDougald and Thomas state that they mentioned Obermeyer's "limitations" when

giving references for other positions to which Obermeyer applied.  Response at 8.  In her Affidavit,

Padilla states:

> In my presence on two occasions, I heard Ms. McDougald and Ms. Thomas saying
> that when references called about Complainant, they would provide the references
> with information about Complainant's "limitations."  On one occasion not related to
> the position at issue, I heard Ms. McDougald saying that she had talked to the budget
> people in the ASC and that they told her that Complainant was moved from one job
> to another in the ASC.  Ms. McDougald said that the budget folks in the ASC had
> "found out what Kay's limitations are."  In talking to the budget staff in the ASC,
> management made sure that Complainant could not get another job.

Padilla Aff. ¶ 24, at 9.

Second, Obermeyer alleges that Tomas and McDougald stated that Obermeyer is "slow."

Response at 8.  Obermeyer alleges McDougald stated in a prior EEO affidavit -- three months after

selecting Ly for the Budget Analyst position at issue in this case -- that Obermeyer was "a little

slow."  Response at 8.[20]  Additionally, the parties admit that Thomas informed Carroll that

Obermeyer would be "slow" in performing the duties of the Budget Analyst position.  Response ¶

---

[20] In regard to McDougald's statement in the EEO affidavit, the Defendant argues that "such a statement allegedly being made in her prior EEO . . . is hearsay [sic] and irrelevant."  Reply at 8 n.2.  Unlike Obermeyer's unsworn statements in her rebuttal, McDougald's sworn statements in an affidavit are admissible to oppose a motion for summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").  The substance of the statements are not hearsay, but the admissions of the agent of the Obermeyer's party opponent concerning a matter within the scope of her agency.  See Fed. R. Evid. 801(d)(2)(D).  While McDougald's EEO affidavit may not be admissible, she could be called to testify about the substance of the statements, which are admissible.  See Johnson v. Weld County, Colo., 594 F.3d at 1210 ("Evidence presented in the form of an affidavit at summary judgment can be 'converted' in form into live testimony at trial, [but] the content or substance of the affidavit must be otherwise admissible").

15, at 4 (citing Carroll Aff. ¶ 21, at 2 ("Ms. Thomas stated to me that Complainant would be slow in performing the duties of the position at issue.  She said she based this statement on her experience when Complainant worked for GSTC."); Reply ¶ 9, at 5.

The Defendant replies that these comments fall short of the standard for establishing direct evidence under Tenth Circuit precedent.  See Reply at 7-9.  The Defendant argues that these statements are susceptible to nondiscriminatory interpretations and are therefore not direct evidence.  See Reply at 8 (citing Hall v. United States Dep't of Labor, Admin. Review Bd., 476 F.3d at 855 ("A statement that can plausibly be interpreted two different ways -- one discriminatory and the other benign -- does not directly reflect illegal animus, and, thus, does not constitute direct evidence.")(citation and internal quotation marks omitted)).  The Defendant asserts that Thomas' statement  that Obermeyer "would be slow in performing the duties of the position at issue" can be interpreted in at least two ways.  Reply at 8.  First, the Defendant argues, it could mean that Obermeyer "worked at a slow pace, not necessarily because of her hearing difficulties."  Reply at 8.  Second, he continues, it could mean that Obermeyer "would need a considerable amount of training for the position because she did not have any significant Budget Analyst experience."  Reply at 8.  The Defendant further argues that the statement "does not relate Plaintiff's hearing loss 'to any dissatisfaction with her work,'" id. at 8 (quoting  Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1118 (10th Cir. 2007)), and that "McDougald has testified that Plaintiff's 'work was acceptable and accurate,'" Reply at 8 (quoting McDougald Aff. ¶ 18(1), at 8).

The Defendant similarly argues that "the purported statements about 'limitations' to which Ms. Padilla referred . . . can be interpreted in more than one way not necessarily relating to Plaintiff's ability to perform the requirements of the position at issue," Reply at 9, though the Defendant does

not provide an example of what that might be.  The Defendant further argues that Obermeyer fails to establish a sufficient nexus between the alleged statements about her "limitations" and the decision not to select her for the Budget Analyst position, because the statements "are not temporally connected to her non-selection."  Id. at 9 (citing Hall v. U.S. Dep't of Labor, 476 F.3d at 856-57 (stating that a plaintiff must demonstrate a nexus exists between the allegedly discriminatory statements and the employment decision concerning her)).  The Defendant argues that the nexus does not exist because the alleged statements were made after Obermeyer left the GSTC.  See Reply at 9. The Defendant also notes  that Padilla, who testified to the alleged statements, witnessed the Panel discussion and testified that she did not detect any discriminatory motives concerning the selection of Ly.  See Reply at 9 (citing Padilla Aff. ¶ 21, at 8).

The Court finds that these statements do not amount to direct evidence of discrimination. "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."  Hall v. U.S. Dep't of Labor, 476 F.3d at 855.  Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."  Danville v. Reg'l Lab Corp., 292 F.3d at 1249.  "A statement that can plausibly be interpreted two different ways -- one discriminatory and the other benign -- does not directly reflect illegal animus, and, thus, does not constitute direct evidence."  Hall v. U.S. Dep't of Labor, 476 F.3d at 855 (quoting Patten v. Wal-Mart Stores East, Inc., 300 F.3d at 25)(internal quotation marks omitted).  "When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination, . . . the plaintiff must demonstrate a nexus exists between the allegedly discriminatory statements and the decision to terminate her."  Hall v. U.S. Dept. of Labor, Admin. Review Bd., 476 F.3d at 857 (quoting McCowan v. All Star Maint. Inc., 273 F.3d at 922 n.3)(alterations in original).

"Direct evidence is that which demonstrates a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision to take the adverse employment action." Deneen v. Nw. Airlines, 132 F.3d at 436. "Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements" Hall v. U.S. Dep't of Labor, 476 F.3d at 855 (citing Shorter v. ICG Holdings, Inc., 188 F.3d at 1207).

In Hall v. U.S. Department of Labor, the Tenth Circuit addressed a number of statements the plaintiff argued were direct evidence supporting his claim that he was constructively discharged in retaliation for whistleblowing, and the Tenth Circuit found "[n]one of the statements Dr. Hall offer[ed] as direct evidence of retaliatory motive can be so characterized." 476 F.3d at 855.[21]  The Tenth Circuit found that the plaintiff's allegation that "the Commanding General at the Army Test and Evaluation Command in Aberdeen, Maryland, had called Dr. Hall a 'traitor' in 1990 for reporting environmental violations" failed because "there was no evidence to suggest that Dr. Hall subjectively perceived the comment as 'hostile.'" Id.  The Tenth Circuit considered the statement "Col. Ertwine does not want the appearance that I am being moved out in retaliation for having caused an OSHA inspection; [h]e and I agreed that would be very counterproductive insofar as getting employees to take safety and hazardous waste matters seriously," and found the statement failed to establish direct evidence because it allowed the "permissible inference to be drawn . . . that Colonel Ertwine wanted

_____

[21] The Tenth Circuit has applied the standard established in Hall v. U.S. Dep't of Labor to disability discrimination cases in the ADA context.  See Jones v. United Parcel Serv., 214 F.3d at 1188 n.6.

-37-

to prevent others from feeling inhibited in their ability to report safety concerns because of a belief that Dr. Hall was transferred because he reported such concerns." Id. at 856. The Tenth Circuit noted that "statements susceptible to two different interpretations -- one discriminatory, the other not -- is not direct evidence of illegal animus." Id.

The Tenth Circuit also found that the claim that "Dr. Harvey['s] . . . testi[mony] that . . . he was ordered to submit to a fitness-for-duty exam at the same time as another employee (who Dr. Harvey believed to be Dr. Hall) in order to avoid the appearance of disparate treatment with respect to the other employee's exam" failed as direct evidence because "retaliatory motive must be inferred from this evidence because Dr. Harvey's testimony requires one to infer that the other employee was Dr. Hall." Id. The Tenth Circuit further stated that "the testimony provides no explicit nexus between [the] decision to require Dr. Hall to submit to a fitness-for-duty exam and Dr. Hall's protected activity." Id. Similarly, the Tenth Circuit found that the "instruct[ion to] Dr. Hall's immediate supervisor at the time, Dr. Lyman Condie, to 'turkey farm' Dr. Hall" failed as direct evidence. Id. at 857.

> Dr. Hall argue[d] this statement is an expression of hostility, but the meaning of this statement is ambiguous. In context, the comment supports an inference that Dr. Resnick intended Dr. Hall to be placed on non-critical assignments due to Dr. Hall's lack of productivity, not due to his reporting of environmental and safety concerns.

Id.

The Tenth Circuit stated, "[t]hough retaliatory comments made by a manager responsible for the employment decision at issue during the decision-making process might constitute direct evidence of discrimination, the same does not hold true for ambiguous statements where the retaliatory motive is not apparent on its face." Id. (citing Danville v. Reg'l Lab Corp., 292 F.3d at 1249 (finding that, when decision-maker's comment that plaintiff "might not be around very long"

-38-

could have referred either to plaintiff's age or to her tendency to change jobs frequently, the comment was only circumstantial evidence of discrimination).

The Tenth Circuit in Heim v. Utah, 8 F.3d 1541 (10th Cir. 1993), addressed a plaintiff's claim that her male supervisor denied her job training opportunities because of her gender.  The plaintiff's supervisor, in an angry outburst regarding the plaintiff's performance of her duties, stated: "Fucking women, I hate having fucking women in the office." Id. at 1546.  The plaintiff argued that his comment constituted direct evidence of discrimination.  Id. The Tenth Circuit disagreed:

> Although the remark by [the supervisor] was certainly inappropriate and boorish, it was on its face a statement of [the supervisor's] personal opinion. The evidence does not show [the supervisor] acted with discriminatory intent, only that he unprofessionally offered his private negative view of women during a display of bad temper at work. At best, it is only arguable that a discriminatory intent . . . can be inferred from the statement. This type of inferential statement is not "direct evidence" of discrimination satisfying plaintiff's burden.

Id. at 1547.

Similarly, in Shorter v. ICG Holdings, Inc., 188 F.3d 1204 (10th Cir. 1999), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-102, (2003), the Tenth Circuit addressed a race discrimination claim where the plaintiff argued that three comments made by Dughman, the person who fired her, were direct evidence of discrimination:

> Dughman made three race-related comments to and about Shorter.  Once, while eating lunch with Shorter, Dughman asked Shorter about black men's sex organs. On another occasion, Dughman told another ICG employee that Shorter talked like people of her culture, race, or color.  During a confrontation with Shorter about Shorter's job performance, Dughman told her, "You are just on the defensive because you are black."

Id. at 1206 (citations omitted).

The Tenth Circuit found that "the statements [we]re not direct evidence that Dughman fired Shorter because she was black.  Instead, the trier of fact would have to infer Dughman's motive from

her statements." Id. at 1208 (citations omitted). See Ramsey v. City and County of Denver, 907 F.2d

1004, 1008 (10th Cir. 1990) (distinguishing between direct evidence of discrimination and "direct

evidence of personal bias"); Furr v. AT & T Techs., Inc., 824 F.2d 1537, 1547, 1549 (10th Cir.1987)

(holding that managers' statements that plaintiffs were too old to learn new technologies and too old

to be in supervisory positions were not direct evidence of discrimination; rather, remarks were

"specific instances of discriminatory statements" from which the reasons for the adverse

employment decision would have to be inferred).

      In light of the high standard established in Hall v. U.S. Department of Labor, references to

Obermeyer being "slow" fail to establish direct evidence, because they are subject to multiple

interpretations, and may not refer at all to her disability.  Hall v. U.S. Dep't of Labor, 476 F.3d at

855 ("A statement that can plausibly be interpreted two different ways -- one discriminatory and the

other benign -- does not directly reflect illegal animus, and, thus, does not constitute direct

evidence." (citation and internal quotation marks omitted)).  As the Defendant argues, the references

to Obermeyer being "slow" may be reasonably construed to refer to matters other than Obermeyer's

disability, such as her productivity independent of her disability or the amount of training she would

require.  See Reply at 8.  Additionally, the alleged statements that Obermeyer would be "slow" do

not necessarily implicate her deafness, and at least one inferential step is required for the finder of

fact to connect statements about Obermeyer being "slow" to her being disabled.  See Hall v. U.S.

Dep't of Labor, 476 F.3d 855 ("Direct evidence is evidence, which if believed, proves the existence

of a fact in issue without inference or presumption.").  McDougald's and Thomas' alleged

statements about Obermeyer being "slow," therefore, do not constitute direct evidence of

discrimination because a trier of fact must infer that the slowness referenced is a result of

Obermeyer's disability, and the statements are subject to an interpretation that does not suggest bias.

Similarly, McDougald's and Thomas' alleged statements about Obermeyer's "limitations" are, at most, only direct evidence of their motivation, not direct evidence that they discriminated against Obermeyer by not promoting her to the Budget Analyst position.

> [S]tatements of personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination. At most, such statements constitute only indirect or circumstantial evidence of discrimination because the trier of fact would have to infer that the bias reflected in the statements was the reason behind the adverse employment decision.

Shorter v. ICG Holdings, Inc., 188 F.3d at 1207. McDougald's and Thomas's alleged statements providing references with information about Obermeyer's "limitations" require less of an inferential step than their alleged comments about her being "slow," but they do require an inference. First, the factfinder must infer that Obermeyer's "limitations" include her deafness; that is not an unreasonable inference and may even be a likely inference, but she may have had non-disability limitations, too. Secondly, the factfinder must infer that commenting to others about Obermeyer's "limitations" implies that they discriminated against Obermeyer in rejecting her for the Budget Analyst position. Thus, the statements may provide direct evidence of bias, but they do no provide direct evidence of discrimination. In addition to these inferences, the statements lack the necessary nexus to Obermeyer's candidacy for the Budget Analyst position because they were not made at the time she was applying for the job. Consequently, these were not "comments made by a manager responsible for the employment decision at issue during the decision-making process." Hall v. U.S. Dep't of Labor, 476 F.3d at 857 (citing Danville v. Reg'l Lab Corp., 292 F.3d at 1249). A reasonable jury could not find, based on these statements, without making some inference, that Obermeyer was not selected or the Budget Analyst position because of her disability. See Danville

v. Reg'l Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002)("Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."). See also Hall v. U.S. Dep't of Labor, 476 F.3d at 857 ("[R]etaliatory comments made by a manager responsible for the employment decision at issue during the decision-making process might constitute direct evidence of discrimination."). For these reasons, the alleged statements do not establish direct evidence of discrimination. The statements may, however, be circumstantial evidence. EEOC v. Wiltel, Inc., 81 F.3d 1508, 1514 (10th Cir. 1996)("Because such statements require the trier of fact to infer that discrimination was a motivating cause of an employment decision, they are at most circumstantial evidence of discriminatory intent.").

## B. OBERMEYER HAS ESTABLISHED A PRIMA-FACIE CASE OF DISABILITY DISCRIMINATION.

Obermeyer established a prima-facie case of disability discrimination under the Rehabilitation Act. Under the McDonnell Douglas burden-shifting framework that applies to Rehabilitation Act discrimination cases, to establish a prima-facie case of discrimination under the Rehabilitation Act, a plaintiff must show: (i) she is disabled under the Act; (ii) she is "otherwise qualified" for her position; (iii) she works for a federal agency; and (iv) the agency has discriminated against her. McGeshick v. Principi, 357 F.3d at 1150. "A showing that similarly situated employees were treated differently is not 'an indispensable element of the prima facie case,' although it may be relevant to show the existence or absence of the . . . element of discrimination." Fox v. Nicholson, 304 F. App'x at 730 (quoting Sorbo v. United Parcel Serv., 432 F.3d at 1173).

The Defendant argues that Obermeyer has not established a prima-facie case of discrimination under the McDonnell Douglas burden-shifting framework. He assumes, for the purposes of this Motion only, that Obermeyer will be able to establish that she was disabled within

-42-

the meaning of the Rehabilitation Act.  See Motion at 10 n.3.  The parties agree that Obermeyer was qualified for the position and that she worked for a federal agency.  See Motion ¶¶ 3, 7, at 3; Response ¶ 2, 25.  The Defendant argues, however, that Obermeyer cannot show the agency discriminated against her because of her disability.  See Motion at 13-15.

The Defendant argues that Obermeyer cannot establish a prima-facie case of disparate treatment.  See Motion at 13.  The Defendant argues that she and twenty other candidates were treated identically.  See Motion at 13.  Of the twenty-four candidates deemed qualified through the FS's AVUE system, twenty others, like Obermeyer, were subject to the Panel's review, and individually rated and ranked before having their scores compared, and being rejected for failing to be one of the three highest ranking candidates whom the Panel referred for further consideration. See Motion at 13-14.  Just like the other twenty candidates who did not receive the Panel's recommendation for further consideration, the Defendant argues, Obermeyer was not referred because her scores at both the GS-7 and GS-9 position ranked her below the top three candidates -- ranking 9th and 10th place respectively.  See Motion at 14.  The Defendant also notes that, "[b]ecause Plaintiff's name was not forwarded by the Panel for consideration, Ms. McDougald could not recommend her, and Ms. Thomas could not select her."  Motion at 14.

The Defendant also argues that Obermeyer "cannot demonstrate any evidence that the Agency intentionally discriminated against her based upon her alleged disability."  Motion at 14. The Defendant asserts that Obermeyer has admitted that she has no reason to believe that Losito or Miles discriminated against her on the basis of either her disability or her prior protected activities. See Motion at 14.  The Defendant further notes that Obermeyer was asked to rank her experience in the same areas the Panel members ranked her:

> At the GS-7 level, in the area of ability to communicate effectively other than in writing, Plaintiff ranked herself a 4, and the scores she received from the panel were 5, 5, and 3, and in the area of ability to communicate in writing, she ranked herself a 4, and her scores were 3, 5, and 5.

Motion at 14-15 (citing Partial Application, filed July 20, 2010 (Doc. 29-9); KSA Evaluation Sheets at 1-3, filed July 20, 2010 (Doc. 29-10)).  Based on this evidence, the Defendant argues Obermeyer "cannot establish that her scores were not commensurate with her experience."  Motion at 14.

Obermeyer responds that she has shown the Defendant discriminated against her because of her disability.  See Response at 9.  Obermeyer argues that the Defendant's "placing great weight on the fact that the three-person Panel that was convened in this case, individually rated and ranked the candidates on their knowledge, skills and abilities before comparing the scores and reaching a consensus for the final scores of the highest ranking candidates," "ignores that the three-person Panel was not the final say in filling the position for which Plaintiff applied."  Response at 9. Rather, Obermeyer argues, once the Panel selected the top three candidates, McDougald, the Recommending Official, "who was Plaintiff's immediate line supervisor and was the same person who made comments about Plaintiff being slow and having limitations," had to recommend the candidates, and Thomas, the Selecting Official, "who also had made previous statements regarding Plaintiff's limitations," had to clear them.  Id. at 10.  Carroll, who knew of Obermeyer's candidacy for the Budget Analyst position and was of aware of Obermeyer's hearing impairment, approved the final recommendation.  See Response ¶¶ 14, 16, at 4-5, 10; Reply ¶ 9, at 5.  Obermeyer argues that, "[w]ith the preconceived biases in place by the Recommending, Selecting and Approving Officials, regarding Plaintiff's 'limitations,' and their perception that Plaintiff was slow, there was no chance that Plaintiff was going to be evaluated on a fair and equal basis by the ultimate deciding officials, notwithstanding any recommendation of the three-person Panel."  Response at 10.

Obermeyer also argues that Padilla stated that the management officials involved in making selections for Budget Analyst position have demonstrated a pattern of not selecting Obermeyer for retention or promotion in the GTSC, and that they "routinely deselected the Plaintiff for positions in the GTSC." Response at 10-11. Obermeyer further asserts that Padilla noted a variance between Obermeyer's scores from Losito, who knew of Obermeyer's disability, and the other panelists. See Response at 11. Finally, Obermeyer argues that McDougald recommended Ly, Thomas selected Ly, and Carroll approved Ly for the Budget Analyst position, while Obermeyer "was eligible for selection and was not selected." Response at 11. Obermeyer argues that, "[a]s a result of these decisions, Plaintiff was discriminated against because the Recommending, Selecting and Approving Officials all were aware of Plaintiff's disability and the impact that it had on Plaintiff's application." Response at 11.

Obermeyer further argues that the Defendant failed to accommodate her because he did not offer her an alternative to filling out a KSA. See Response at 10. She argues that, when she filled out her KSA for the job application, "she was hampered by her writing ability due to her hearing impairment which left management with the mistaken idea that she was slow, when she was actually performing well based on her disability." Response at 10. She further asserts that the "Defendant could have reasonably accommodated her with a live interview, but did not do so." Response at 10.

The Defendant replies that two unbiased witnesses who participated in the hiring process testified that the Panel did not consider Obermeyer's disability. See Reply at 9. He notes that one of those witnesses was Padilla, who testified about McDougald's and Thomas' statements about Obermeyer's "limitations" and that management deselected Obermeyer for positions in the GTSC.

See Reply at 9.  Of the Panel selection process, Padilla testified:

> There was no indication to me that Complainant's disability or prior EEO activity were factors in the rating and ranking of the candidates by the panel.  In my presence, Complainant's disability and prior EEO activity were not discussed.  I do not have any indication that Ms. Thomas influenced the rating and ranking of the candidates, including Complainant.

Padilla Aff. ¶ 21, at 8.

The Defendant further argues that the Panel had final say in filling the position, because "they determined who the top three candidates were for each grade level," and that "McDougald did not make that decision by herself," and "no one has testified that Ms. McDougald tried to influence the other two panel members in any manner whatsoever."  Reply at 9.  The Defendant asserts that, because Obermeyer received significantly lower scores than the other candidates, the differences in the Panel members' scoring were not addressed.  See Reply at 9.

The Court finds that Obermeyer has established a prima-facie case of disability discrimination.  The Court agrees with the Defendant that Obermeyer was treated the same as twenty other candidates for the Budget Analyst position, who were all scored under the same methodology, and all of whom failed to garner the Panel's recommendation.  Obermeyer's argument that she was treated differently than Ly is unconvincing, because the evidence suggests that Ly was better qualified for the position and the Panel assigned her its highest score, significantly higher than Obermeyer's score.  Unlike Obermeyer, Ly was already at a GS-9 level and preforming duties similar to those required for the Budget Analyst position.  Consequently, Obermeyer was not similarly situated to Ly.  Based on this evidence, the Defendant is correct that Obermeyer cannot make a showing of disparate treatment, at least as to the selection process for the Budget Analyst position, but "[a] showing that similarly situated employees were treated differently is not 'an

indispensable element of the prima facie case,' although it may be relevant to show the existence or absence of the . . . element of discrimination." Fox v. Nicholson, 304 F. App'x at 730 (quoting Sorbo v. United Parcel Serv., 432 F.3d at 1173).

By presenting evidence that the Defendant did not promote her and supporting an inference that the supervisors who made the decision not to promote her were biased against her, Obermeyer has shown she "suffered an adverse employment action under circumstances giving rise to an inference of discrimination based on disability." Horner v. Income Producing Mgmt. of Okla., Inc., 173 F.3d 863, at *2 (10th Cir. 1999)(citing Morgan v. Hilti, Inc., 108 F.3d at 1323).  In Morgan v. Hilti, Inc., the Tenth Circuit explained

> The final prong of the test requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision.  See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995).  This burden is "'not onerous,'" id., (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)), but it is also "not empty or perfunctory," Ennis, 53 F.3d at 59.  The plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law.  Id.

108 F.3d at 1322-23.

The Court disagrees with the Defendant's argument that Obermeyer "cannot demonstrate any evidence that the Agency intentionally discriminated against her based upon her alleged disability." Motion at 14.  On the contrary, as the Defendant suggests in his Response, McDougald's and Thomas's statements characterizing Obermeyer as "slow" and referencing her "limitations," which fall short of direct evidence, are circumstantial evidence of discrimination. See Reply at 8 ("Because such statements require the trier of fact to infer that discrimination was a motivating cause of an employment decision, they are at most circumstantial evidence of discriminatory intent." EEOC v. Wiltel, Inc., 81 F.3d at 1514.

Obermeyer has also presented testimony from Padilla that provides circumstantial evidence of discrimination.  Padilla states:

> I also know there is a pattern by the same managers involved in Complainant's prior EEO Complaint and her current complaint, to not select her for retention or promotion in the GSTC. The management officials involved in making selections for positions that Complainant was eligible for at the GSTC are: Charlene McDougald, Budget Officer; Marcia Thomas, Administrative Officer; and Roberta Carroll, Center Manager (Supervisory Cartographer). I believe they routinely "de-select" Complainant for positions in the GSTC.

Padilla Aff. ¶ 7, at 3.  As Obermeyer points out, McDougald, Thomas, and Carroll were respectively the Recommending, Selecting, and Approving Officials for determining the candidate for the Budget Analyst position.  Besides Padilla's testimony, the parties do not dispute that McDougald and Thomas were aware of Obermeyer's hearing disability and her previous EEO Complaint, see Response at ¶¶ 6, 3, at 3; Reply ¶ 4, at 5, and that Carroll was aware of Obermeyer's hearing impairment, see Response ¶¶ 14, 16, at 4, 5; Reply ¶ 9, at 5.  The parties also admit that Thomas informed Carroll that Obermeyer would be "slow" in performing Budget Analyst position duties.  See Response ¶ 15, at 4; Reply ¶ 9, at 5.

Despite being qualified for the position at both the GS-7 and GS-9 level, see Motion ¶¶ 3, 7, at 3; Response ¶ 2, 25, McDougald has testified that she believed Obermeyer would have required a "considerable amount of training" to perform the duties of a Budget Analyst at the GS-7 level, see Response ¶ 9, at 4; Reply ¶ 6, at 5.  Similarly, Thomas has testified that she did not know whether Obermeyer  could have performed the duties of the position at the GS-7 and GS-9 levels, with or without reasonable accommodation.  See Response ¶ 11, at 4; Reply ¶ 7, at 5.

In addition to being the Recommending Official, McDougald also served as the Panel Evaluation Team Chairperson.  See Motion ¶ 9, at 4; Response ¶ 1, at 2.  While the Defendant is

correct that "McDougald did not make [the Panel's] decision by herself," Reply at 9, she participated in scoring Obermeyer and selecting the candidates. See Motion ¶ 9, at 4. Furthermore, another Panel member, Losito, was also aware of Obermeyer's disability. See Motion ¶ 29, at 7. In sum, the Court finds that Obermeyer has shown she "suffered an adverse employment action under circumstances giving rise to an inference of discrimination based on disability." Horner v. Income Producing Mgmt. of Okla., Inc., 173 F.3d 863, at *2 (10th Cir. 1999)(citing Morgan v. Hilti, Inc., 108 F.3d at 1323).

### C.   THE DEFENDANT HAS A LEGITIMATE, NONDISCRIMINATORY JUSTIFICATION FOR NOT SELECTING OBERMEYER.

Once Obermeyer establishes a prima-facie case for her disability discrimination claim, "the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision." Mitchell v. City of Wichita, Kan., 140 F. App'x at 777. The Defendant argues that he has a legitimate explanation as to why the Panel did not advance Obermeyer's candidacy for further consideration. See Motion at 15. He asserts that Obermeyer was ranked significantly below the top three candidates at both the GS-7 and GS-9 levels. See Motion at 15. The Defendant further argues that the selected candidate, Ly, was more qualified, as she was already performing at the GS-9 level and in a position with essentially the same duties as the Budget Analyst position. See Motion at 15 (citing Brooks v. Barnhart, 78 F. App'x 52, 55 (10th Cir. 2003)("The Commissioner met this burden by asserting a facially nondiscriminatory reason for not promoting [plaintiff]: he was not the best qualified candidate for the . . . position."). The Defendant contrasts Ly's qualifications with those of Obermeyer, who had no significant experience for the Budget Analyst position. See Reply at 10. The Defendant asserts that his reasons for excluding Obermeyer from the list of candidates who made it past the Panel for further evaluation was

legitimate and facially nondiscriminatory, thereby discharging the Defendant's burden under McDonnell Douglas.  See Motion at 15-16.  Because the facts justified the decision, the Defendant argues, Obermeyer cannot prove that Defendant's reasons were pretextual and "unworthy of credence."  Motion at 16 (quoting Morgan, 208 F.3d at 1319).

"Upon the employer's articulation of legitimate, nondiscriminatory reasons . . . the presumption of discrimination established by the prima facie case simply drops out of the picture." Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted).  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. at 142 (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993)).  The Court finds that the Defendant has articulated a legitimate, facially nondiscriminatory claim.  Obermeyer failed to garner a score from the Panel that would advance her to the next round of review, and the candidate that was selected for the Budget Analyst position was more qualified than Obermeyer.  Thus, the Defendant has articulated a legitimate, nondiscriminatory justification for not promoting Obermeyer, meeting his burden of product.

### D.   OBERMEYER HAS NOT ESTABLISHED A GENUINE QUESTION OF MATERIAL FACT WHETHER THE DEFENDANT'S JUSTIFICATION IS PRETEXTUAL.

Because the Defendant has provided a legitimate, nondiscriminatory reason for not promoting her, the burden shifts back to Obermeyer "to show sufficient disputed facts that [the Defendant's] reason was merely a pretext for . . . discrimination."  Turner v. Public Serv. Co. of Colo., 563 F.3d 1136, 1144 (10th Cir. 2009)(citing Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1112-13 (10th Cir. 2007)).  The Court finds that Obermeyer has not presented evidence establishing a genuine question of material fact whether the Defendant's justification is pretextual.

-50-

Obermeyer argues that several factors establish that the Defendant's explanation is pretextual:

> First, the Recommending Official, Charlene McDougald perceived Plaintiff as slow, having limitations, and lacking speed in performing her duties. Yet Plaintiff had received a "successful" summary rating from Ms. McDougald. Second, there were discrepancies in the Plaintiff's ratings before the Panel. Third, Plaintiff was blocked from the Certificate of Eligibles for the GS-9 position, yet was rated against GS-9 applicants.[22] Fourth, Pam Padilla testified that she heard Charlene McDougald tell Marcia Thomas that, in a previous instance, the Plaintiff could not do the job and they did not have "time to train her." Fifth, both Ms. McDougald and Ms. Thomas stated, on at least two occasions, in Ms. Padilla's presence, that when references were called about the Plaintiff, they would provide references with information about the Plaintiff's "limitations."

Response at 11-12 (citations omitted).

Obermeyer further argues the other actions of GSTC's management provide further evidence that the Defendant's justification is pretext. She argues that she was assigned "a sign language interpreter even when she did not need one, given . . . false reasons and information about her non-selection and the availability of jobs for which she had an interest." Response at 12. She also alleges that the Defendant failed to "provide her with career counseling, or otherwise encourage her advancement." Response at 12. Obermeyer also asserts that she is "dealt with by management with fear and avoidance and is left out of the loop, many times missing important information for her job." Response at 12. She further contends that the Defendant did not accommodate her disability

---

[22] Obermeyer notes that she did not make the Certificate of Eligibles at the GS-9 level, but was still "compared to other applicants in the GS-9 pool." Response at 11 (citing Padilla Aff. ¶ 13, at 5). In her Affidavit, Padilla stated that this was not because of the action of Obermeyer's supervisors, but that "one or more of the veterans on the non-competitive certificate of eligibles blocked Complainant and any other candidate who were not eligible for reassignment or change to lower grade." Padilla Aff. ¶ 14, at 5. Padilla's statement does not suggest that Obermeyer's exclusion from the list supports her argument that the Defendant's explanation is pretextual. Moreover, Obermeyer admits that her "name was on the lists for both the GS-7 and GS-9." Response ¶ 1, at 2.

in the interview process.  <u>See</u> Response at 12.  She argues that these considerations raise material

issues of fact regarding the Defendant's proffered explanation for not selecting Obermeyer.  <u>See</u>

Response at 12.

> In sum, Obermeyer argues that the Defendant's explanation
>
> does not explain Defendant's perceptions and statements of the Plaintiff regarding her being slow, having limitations, needing training, and failing to accommodate those perceived disabilities, as well as failing to accommodate her actual communication disabilities in the job application process.  Simply put, the Plaintiff was working from a disadvantage at the outset because she was being compared to a non-disabled person in her communication skills and no accommodation or variance was made for her disability.  Thus, as a practical matter, the Plaintiff could never qualify for a position because a non-disabled person would always be considered more qualified.

Response at 13.

The Defendant replies that Obermeyer's assumptions, "based largely upon her own

feelings[,] do not rise to the level needed to show pretext."  Reply at 10.  The Defendant argues that

everyone has testified that the person who was awarded the position was extremely well qualified

and had been performing the same work at the GS-9 level, which he contrasts with Obermeyer, who

he asserts had no significant experience for the Budget Analyst position.  <u>See</u> Reply at 10.  Thus,

the Defendant concludes, Obermeyer has failed "to demonstrate that [she] had similar experience

and skills to those possessed by the person[] who [was] hired . . . ."  Reply at 10 (quoting <u>EEOC v.</u>

<u>Wiltel, Inc.</u>, 81 F.3d at 1516-17).

The Defendant also argues that Obermeyer "never requested an accommodation, reasonable

or otherwise, concerning her application for the Budget Analyst position."  Reply at 12-13.  The

Defendant asserts that Obermeyer "never informed anyone within the Agency that she needed an

accommodation for her alleged disability in the form of a live interview because of her purported

inability to write effectively."  Reply at 13.  "Even though the individuals who were involved in the selection process knew of her alleged disability, they cannot be presumed to know she should have been given an opportunity to perform a live interview."  Reply at 13.

The Court finds that Obermeyer has not established a genuine question of material fact whether the Defendant's explanation is pretextual.  To establish a genuine issue of material fact as to pretext, Obermeyer must demonstrate that the Defendant's "proffered non-discriminatory reason is unworthy of belief."  Pinkerton v. Colo. Dept. of Transp., 563 F.3d at 1065 (internal quotation marks and citations omitted).  Obermeyer can meet this standard by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  Pinkerton v. Colo. Dept. of Transp., 563 F.3d at 1065 (internal quotation marks and citations omitted).  "If a plaintiff advances evidence upon which a factfinder could conclude that the defendant's allegedly nondiscriminatory reasons for the employment decisions are pretextual, the court should deny summary judgment."  Reinhardt v. Albuquerque Public Schools Bd. of Educ., 595 F.3d at 1134.  "[A] plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. at 148.  Consequently, "once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment."  Bryant v. Farmers Ins. Exchange, 432

F.3d at 1125.  "Debunking one of the employer's explanations defeats the case for summary judgment 'only if the company has offered no other reason that, if that reason stood alone (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining.'"  <u>Jaramillo v. Colo. Judicial Dep't</u>, 427 F.3d at 1310 (quoting <u>Russell v. Acme-Evans Co.</u>, 51 F.3d at 69).

Obermeyer has not presented evidence that would support a finding by a reasonable jury that the Defendant's justification for hiring Ly instead of Obermeyer was pretextual.  Because Obermeyer's candidacy for the Budget Analyst position did not make it past the Panel, to create a material question of fact that the Defendant's explanation is pretextual, she must put forward evidence that would support a reasonable jury finding "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Defendant's account of why the Panel did not select Obermeyer as one of the top three candidates who advanced to the next stage of consideration. <u>Morgan v. Hilti, Inc.</u>, 108 F.3d at 1323 (citations and internal quotation marks omitted).  Under the subordinate bias theory,[23] the Court must also consider if Obermeyer has established "a genuine issue of material fact as to whether [a subordinate's] bias translated into discriminatory actions that caused" the Panel or the Selecting or Approving Officers to rubber stamp a biased decision not to select Obermeyer for the Budget Analyst position.  <u>EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles</u>, 450 F.3d 490.  Obermeyer has not met her burden.

Interpreting the evidence in the light most favorable to Obermeyer, <u>see</u> <u>Ortiz v. Norton</u>, 254 F.3d 889, 896 (10th Cir. 2001)(stating that at the summary judgment stage "all rational inferences

_____

[23] This theory is also known as the cat's paw and rubber stamp theory.  <u>See</u> <u>EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles</u>, 450 F.3d at 484.

from the evidence must be made in favor of the party opposing the summary judgment motion"),
the Court finds that Obermeyer has presented evidence supporting a question of material fact
whether McDougald and Thomas were biased against her.  The Court does not, however, find that
this evidence of bias is sufficient to create a material question of fact whether the Panel as a whole
was biased.

The Panel was made up of three members, McDougald, Miles, and Losito.  While Obermeyer
has presented evidence supporting a finding that McDougald was biased against her based on her
disability -- namely McDougald's assertion that Obermeyer was unqualified for the position and
McDougald's alleged statements that Obermeyer is "slow" and referencing her "limitations" --
Obermeyer has presented no evidence that the other two members of the Panel shared that bias.
Moreover, a careful review of the evidence reveals that Obermeyer has not established a genuine
issue that McDougald's bias somehow tainted the Panel as a whole.

First, Obermeyer presents no evidence that other Panel members were biased against her.
There is no evidence that Miles knew of Obermeyer's disability at the relevant time.  The parties
agree that Losito was aware of Obermeyer's hearing impairment.  See Response ¶¶ 14, 16, at 4, 5;
Reply ¶ 9, at 5.  No evidence has been advanced, however, that Losito was biased against
Obermeyer based on this knowledge; on the contrary, he gave Obermeyer perfect scores on the GS-7
ranking.  See KSA Evaluation Sheets at 3.  Obermeyer argues that "Padilla . . . noted a variance
between one individual Panelist's scores for the Plaintiff (Bradley Losito, who knew the Plaintiff
was deaf) and other Panelists' scores, and states that the differences in the Plaintiff's scores were
not addressed by the Panel."  Response at 11.  What Obermeyer fails to acknowledge is that Losito
gave Obermeyer higher scores than the other panelists, including a perfect score for the GS-7 level.

-55-

Losito explains that, "[b]ecause [he] did not have Budget or Finance experience, [he] tended to score applicants higher than the other two panelists did." Losito's Decl. ¶ 11, at 3. Consequently, the record does not support a finding that Losito's knowledge of Obermeyer's disability prejudiced him against her.

The Court finds Obermeyer has not established a genuine question whether McDougald caused the Panel or the Selecting and Approving Officials to rubber stamp a biased decision. See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 490. Obermeyer does not argue that McDougald attempted to bias the other panelists against Obermeyer, and no evidence in the record suggests that McDougald influenced the other panelists. Additionally, the Panel used procedures that would prevent panelists from illegitimately influencing each other's score. Miles testified that McDougald did not attempt to influence his votes, and that there was no bias or discrimination on the Panel. See Miles Decl. ¶¶ 4, 13, at 2-3. Losito similarly testified that he "did not detect any bias at all during the panel process." Losito Aff. ¶ 13, at 15. Losito gave Obermeyer perfect scores on the GS-7 ranking. See KSA Evaluation Sheets at 3. Obermeyer admits that she had no reason to believe that Losito and Miles knew of her disability, mush less that they discriminated against her because of it. See Motion ¶ 30, at 7; Response ¶¶ 1, 6, at 2.

The Panel used procedures that would prevent panelists from biasing each other against particular candidates. The panelists scored the candidates separately, and a neutral Human Resources representative monitored the process. All witnesses' accounts of the scoring process agree on the procedure used:

> Each of the three panel members (Ms. McDougald, Mr. Losito, and Mr. Miles) independently evaluated each candidate against the Knowledge, Skills, and Abilities (KSA's) at each grade level. There were three KSA's for the GS-7 level and six for the OS-9 level, resulting in the maximum possible individual score of 15 at the GS-7

> level and 30 at the OS-9 level.  After these scores were recorded and combined
> between the panelists, the maximum possible score at the GS-71level was 45 and at
> the OS-9level was 90.  Those at both levels with the highest scores were written on
> the board, showing each rater's scores for each individual. . . .  [S]ignificant
> discrepancies between scores were discussed between the panelists and a consensus
> was reached on a final score by each rater for each candidate.[24]

Padilla Aff. ¶ 18, at 6-7.  See Losito Decl. ¶¶ 6, 8, at 2; Mcdougald Decl. ¶ 11, at 3; Miles Decl. ¶

9, at 2.[25]

Two neutral third parties from human Resources monitored the Panel's activities, including

Padilla, who testified about Carroll's, McDougald, 's and Thomas' allegedly discriminatory conduct

against Obermeyer.  Regarding the Panel, Padilla testified:

> There was no indication to me that Complainant's disability or prior EEO activity
> were factors in the rating and ranking of the candidates by the panel.  In my
> presence, Complainant's disability and prior EEO activity were not discussed.  I do
> not have any indication that Ms. Thomas influenced the rating and ranking of the
> candidates, including Complainant.

--------------------------------------------------

[24] Padilla also notes that, because Obermeyer was not assigned one of the highest scores, the Panel did not discuss her score, and "the differences in the Complainant's scores were not addressed."  Padilla Aff. ¶ 19, at 7.

[25] In her response to the Defendant's Statement of Undisputed Material Facts, Obermeyer denies the Defendant's account of the process, but fails to specify why, stating only "Plaintiff denies paragraphs 19."  Response ¶ 3, at 2.  After carefully reviewing the record, the Court finds Obermeyer presents no argument or evidence disputing Padilla's account.  Because she failed to specify why she denies this account, the Court treats Padilla's account as admitted.

> A memorandum in opposition to the motion must contain a concise statement of the
> material facts as to which the party contends a genuine issue does exist.  Each fact
> in dispute must be numbered, must refer with particularity to those portions of the
> record upon which the opposing party relies, and must state the number of the
> movant's fact that is disputed.  All material facts set forth in the statement of the
> movant will be deemed admitted unless specifically controverted.

D.N.M.LR-Civ.56.1(b)(emphasis added).  Accordingly, Obermeyer has not established a genuine question of material fact regarding the process the Panel used to select the top three candidates.

Padilla Aff. ¶ 21, at 8.

Thus, interpreting the evidence in the light most favorable to Obermeyer, the evidence supports only a finding of a question of material fact whether McDougald discriminated against her. The Court must also consider if Obermeyer has established "a genuine issue of material fact as to whether [McDougald's] bias translated into discriminatory actions that caused" the Panel to rubber stamp a biased decision not to select Obermeyer for the Budget Analyst position. EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 490. Because no evidence supports finding that McDougald influenced Losito's or Miles' scores, her influence on the Panel's decision was limited to her own scores. McDougald could have caused the Panel to rubber stamp a biased decision if she single-handedly gave Obermeyer such low scores that it took Obermeyer out of the running. The scores the that Panel assigned to the candidates reveal, however, that any bias on McDougald's part did not influence the outcome of her candidacy for the Budget Analyst position, because McDougald's score was neither necessary nor sufficient to keep Obermeyer from ranking among the top three and advancing to the next stage. The record reveals that the Panel assigned Obermeyer a score of 37 out of 45 for the GS-7 level and 50 out of 90 for the GS-9 position. See Table of Scores. Only the top three scoring candidates moved on to the next stage. See Motion ¶¶ 21-23, at 5-6. Obermeyer's scores placed her in ninth place for the GS-7 level and tenth for the GS-9 level. See Table of Scores. The top three scores for the GS-7 level were 45, 45, and 39 before the Panel discussed them, and 45, 45, and 45 after the Panel's discussion. The top three scores for the GS-9 level were 84, 82, and 82 before and after the Panel's discussion.

McDougald gave Obermeyer a GS-7 score of 11 out of 15. See KSA Evaluation Sheets at 3. If she had increased her score to 15 out of 15, that would only increase Obermeyer's total GS-7

score to 41, which would not have placed her in the top three final scores.  The record does not reveal McDougald's GS-9 score, but even if she gave her the minimum score of 0, increasing that score to the maximum of 30 would only increase Obermeyer's total score to 80, which again fails to place her in the top three.

Thus, to show the Defendant's explanation is pretext, Obermeyer must show that the Panel discriminated against her, because her candidacy did not survive its review, and Thomas and Carroll never reviewed her application.  Among the panelists, the record supports only finding a of genuine question of material fact whether McDougald was biased against Obermeyer, and provides no evidence that the other Panel members were biased against Obermeyer or tainted by McDougald's bias.  Consequently, the effect of McDougald's bias on the Panel was limited to the score McDougald assigned Obermeyer, but her score alone was not necessary or sufficient to cause Obermeyer's candidacy to fail.  Thus, the Court finds that Obermeyer has failed to establish a genuine question of material fact whether the Defendant's explanation is pretext.

Additionally, even if Obermeyer could establish a genuine question whether the Panel discriminated against her based on her disability, the Defendant has an independent justification for selecting Ly in that Ly was more qualified.  "Debunking one of the employer's explanations defeats the case for summary judgment 'only if the company has offered no other reason that, if that reason stood alone (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining.'"  Jaramillo v. Colo. Judicial Dep't, 427 F.3d at 1310 (quoting Russell v. Acme-Evans Co., 51 F.3d at 69).

Obermeyer has not disputed that Ly was well qualified and had been performing the same work at the GS-9 level, while Obermeyer had no significant experience for the Budget Analyst

position.  See Reply at 10.  Obermeyer contends, however, that the comparison between her and Ly

was unfair, because the Defendant failed to accommodate Obermeyer by not offering her a live

interview instead of requiring her to write her answers to the KSA.  Not only is this accommodation

claim not properly before the Court, Obermeyer's argument fails because she did not request an

accommodation.  Obermeyer had the obligation to request an accommodation from the Defendant.

See Conneen v. MBNA Am. Bank, N.A., 334 F.3d at 332("[E]ither by direct communication or

other appropriate means, the employee 'must make clear that the [he/she] wants assistance for his

or her disability.'")(quoting Jones v. United Parcel Serv., 214 F.3d at 408); Hall v. Claussen, 6 Fed.

Appx. 655, 666 (10th Cir. 2001)("[A]n employee must ordinarily initiate an interactive process with

the employer by providing notice of his disability and any resulting limitations and expressing a

desire for reassignment."); Gantt v. Wilson Sporting Goods Co., 143 F.3d at 1046 ("The

Commission's interpretive guidelines indicate that generally 'it is the responsibility of the individual

with a disability to inform the employer that an accommodation is needed.'")(quoting  29 C.F.R. pt.

1630 App. § 1630.9); Gantt v. Wilson Sporting Goods Co., 143 F.3d at 1046 n.4 ("It is well settled

in cases brought under the Rehabilitation Act of 1973 . . . that reasonable accommodation is not at

issue if the plaintiff has never requested accommodations."); DeSantis v. Napolitano, No. CIV

08-1205 JB/KBM, 2010 WL 2292592, at *15 (D.N.M. May 26, 2010)(Browning, J.)("The employee

must initially inform the employer not only that he or she is disabled, but that he or she desires an

accommodation for that disability." (citing EEOC v. Convergys Customer Mgmt. Group, Inc., 491

F.3d at 795)).

      The Defendant asserts that Obermeyer never requested an accommodation for the application

process.  See Reply 12-13.  Obermeyer, significantly, does not contend that she requested a live

interview.  Cf. Response at 10 (""Defendant could have reasonably accommodated Plaintiff with

a live interview, but did not do so.").  After carefully reviewing the record, the Court finds it is bereft

of evidence that Obermeyer requested an accommodation for the interviewing process.  Because the

record does not reveal that Obermeyer requested an accommodation, the Court finds that she has not

established a genuine question of material fact whether the Defendant's explanation is pretextual

based on the Defendant's not providing her with a live interview instead of requiring her to complete

a KSA.

       **IT IS ORDERED** that the Defendant's Motion for Summary Judgment, filed July 20, 2010

(Doc. 29) is granted.

 

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jeffrey A. Dahl
Keleher & McLeod, P.A.
Albuquerque, New Mexico

    *Attorney for the Plaintiff*


Kenneth J. Gonzales
  United States Attorney
Phyllis A. Dow
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Defendant*